THE STATE OF OHIO, APPELLEE, *v.* REED, APPELLANT, ET AL.

(No. C-840349—Decided February 13, 1985.)

*Arthur M. Ney, Jr.,* prosecuting attorney, and *Christian J. Schaefer,* for appellee.

*Daniel J. Breyer,* for appellant.

BLACK, J. Defendant appeals from the guilty verdict of sale of a controlled substance in violation of R.C. 2925.03 (A)(1), and from the sentence of two years' imprisonment. He presents six assignments of error. We sustain five of

them, because we find error in the admission into evidence and the use made during trial of a prior drug conviction, errors in accepting a void verdict and then sentencing defendant thereunder, and error in permitting the jury to hear evidence about his post-*Miranda* silence. The case is remanded for further proceedings. A detailed review of the factual and procedural background will assist in the exposition of the reasons for our decision.

## I(A)

The drug sale on September 26, 1983 was witnessed by an undercover police officer who had stationed himself at a concealed vantage point. Another undercover officer prepared and sent an unnamed "informant" to buy drugs from defendant Darrell Reed and co-defendant Dan Gibson. The concealed officer saw Reed talk to the informant and leave him to converse with Gibson, who then went to the porch of an unoccupied residence across the street, picked up a paper bag, poured out three tablets and brought them back to Reed. Reed took them to the informant and exchanged them for two bills, the serial numbers of which had been recorded by the police. After the informant returned to the other officer and gave him the tablets, Reed and Gibson were arrested. The two bills were found on Gibson. While the officers were certain that three tablets had been sold to the informant and taken into their custody, the prosecution's drug expert found only two tablets when he opened the envelope in which they had been delivered to his laboratory. He tested one of the two and found that it contained oxycodone, a controlled substance listed at Schedule II(A)(1)(n) of R.C. 3719.41. Defendant does not dispute the expert's opinion that the tested pill contained oxycodone, or that this is a "Schedule II controlled substance"; he raises the question whether the tested pill was one of those involved in the sale.

## I(B)

Reed and Gibson were jointly charged in the first count of the indictment with sale of percodan (oxycodone), a Schedule II controlled substance, in an amount less than minimum bulk amount in violation of R.C. 2925.03(A)(1), with a specification that Reed at the time had previously been convicted of "a drug offense, to-wit: Attempt [*sic*] Trafficking Offense" on July 5, 1983, in case No. B-831935 in the Hamilton County Court of Common Pleas. (Gibson was, in addition, charged with three possessory drug offenses; he waived a jury trial, was tried to the court while Reed was tried to a jury, and is not involved in the instant appeal.)

At the beginning of Reed's jury trial, the court received in evidence, upon the stipulation of counsel, a certified copy of the judgment entry in case No. B-831935 from the Court of Common Pleas of Hamilton County. That entry recites that defendant had pleaded guilty to "Attempted Trafficking Offense 2923.02 R.C. and 2923.03(A)(1) R.C." and was sentenced to six months' imprisonment in the Cincinnati Correctional Institute, which is the local jail.

In the course of the direct examination of one of the arresting officers, the prosecutor asked whether after the two accused men were given the *Miranda* warnings, they made any statements. Over defense objections, the officer was permitted to state that they had not.

The defendant did not take the stand and offered no evidence, apparently relying on what counsel perceived to be weaknesses in the state's case.

During closing argument, over defense objection, the prosecutor was permitted to comment not only on Reed's credibility, but also on the effect of his conviction of a drug offense committed about two and one-half months before. The prosecutor concluded these comments with the following remark:

"So when you consider what kind of person Darrell Reed is, consider his prior record."

The jury was instructed about the sale of a controlled substance and was told oxycodone was a "Schedule II controlled substance," but was not instructed in any way about the prior conviction. Two verdict forms were given to the jury: a not guilty verdict, and the verdict which all twelve jurors later signed, the body of which reads, in its entirety:

"We, the Jury, in the issue joined, find the defendant, DARRELL REED guilty of TRAFFICKING OFFENSE (SALE) 2925.03(A)(1) R.C." (The words in solid capitals were typed into blanks in the printed form.)

After a presentence report was obtained, sentence was imposed by another judge of the common pleas court acting in the absence of the judge who presided at the trial. The presentence report revealed a conviction record going back thirteen years that included three earlier drug convictions. The sentence of two years (definite), under R.C. 2929.11(D)(1), is the maximum sentence that can be imposed for a felony of the third degree in which physical harm was neither threatened nor caused.

## II

The court erred in permitting the admission in evidence of the certified copy of the prior conviction in case No. B-831935, because that prior conviction could not be used either (a) to increase the degree of the drug violation from a felony of the third degree to a felony of the second degree, or (b) to discredit Reed. Its mere presence as an exhibit was patently prejudicial, and the prosecutor compounded the error by comments in closing argument.

### II(A)

The indictment sought to charge Reed with a second degree felony, but it failed; it charged him with a third degree felony. Sale of a controlled substance is a violation of R.C. 2925.03(A)(1), and under R.C. 2925.03(C)(1) if the controlled substance is in Schedule II, the offense is "aggravated trafficking," a felony of the third degree unless "the offender has previously been convicted of a *felony* drug abuse offense" (emphasis added), in which event it is a felony of the second degree. The indictment did not use the word "felony" in designating the prior conviction in case No. B-831935; it used the phrase "drug offense." On its face, the indictment charged a felony of the third degree, not a felony of the second degree.

Furthermore, the evidence of the prior conviction (that is, the certified copy of the final judgment entry in case No. B-831935) disclosed on its face that the offense to which Reed had pleaded guilty was a misdemeanor of the first degree, not a felony. First, the sentence imposed was six months in the local jail, which can only be a misdemeanor penalty (absent the suspension of a felony sentence and the imposition of probation with a condition of time in the local jail, a situation not disclosed by the certified copy). Second, the admitted crime was "*Attempted* Trafficking Offense" (emphasis added). Under R.C. 2925.03 (A)(1), if that attempt involved a substance in Schedule III, IV, or V, the offense would be a felony of the fourth degree (R.C. 2925.03[D][1]), reduced to a misdemeanor of the first degree under R.C. 2923.02(E). We cannot determine from the record *sub judice* what was the drug involved in the July 1983 sale; since the record contains the certified copy of the judgment entry and nothing more, we are limited to its contents, and it does not identify the drug. We must assume it was a drug listed in Schedule III, IV, or V.

### II(B)

The use of the prior conviction to

discredit Reed was clearly erroneous. He was not a witness and his credibility was not subject to impeachment under Evid. R. 609. Reed did not offer any evidence whatsoever, much less evidence of his good character. Therefore, the prohibition against evidence of a person's character (or trait of character) set forth in Evid. R. 404(A) applies, and this matter does not fall within the exception of subsection (1), which allows the prosecution to rebut character evidence only if the defendant first presents evidence of good character. Finally, the prior conviction was not admissible under Evid. R. 404(B), because it was not offered to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

The admission of evidence of the prior conviction and the use of it made by the prosecution constitute plain errors. *State* v. *Long* (1978), 53 Ohio St. 2d 91 [7 O.O.3d 178]; *State* v. *Craft* (1977), 52 Ohio App. 2d 1 [6 O.O.3d 1]. The second and fifth assignments of error have merit.[1]

### III

The verdict is ineffective and cannot be given any force or effect. It omits an element that is essential to the determination of what offense was committed. The verdict found defendant guilty of "TRAFFICKING OFFENSE (SALE) 2925.03(A)(1) R.C." This is totally insufficient. There is no such offense as a "trafficking offense," and we cannot determine from the verdict (1) the name of the offense, or (2) the degree of the offense, which determines the penalty, or (3) the name or classification of the drug, from which the name and degree of the offense could be determined.

The design of R.C. 2925.03 makes the classification of the controlled substance an essential element of any offense charged under the statute. 4 Ohio Jury Instructions, Chapter 525.03, Sections 1 and 5. The statute sets forth three general categories of offenses, each of which is defined by the classification of the drug involved: (1) "aggravated trafficking," if the drug is included in Schedule I with the exception of marihuana or Schedule II, under subdivision (C) of R.C. 2925.03; (2) "trafficking in drugs," if the drug is included in Schedule III, IV or V, under subdivision (D); and (3) "trafficking in marihuana," if the drug is marihuana, under subdivision (E). See the discussion of R.C. 2925.03 in *State* v. *Jones* (June 6, 1984), Hamilton App. No. C-830608, unreported. The degrees of the offenses described in R.C. 2925.03 range from the second degree to the fourth degree. When the offense is a sale in an amount less than the minimum bulk amount in violation of R.C. 2925.03(A)(1), it is impossible to know the degree of the offense without knowing the identity and classification of the drug. That is all the more important in the instant case because the defendant raised the issue whether the tablets introduced against him were in fact the tablets involved in the sale.

This deficiency in the verdict cannot be supplied by any interpretation of the language of the verdict. "TRAFFICKING OFFENSE (SALE)" is simply not one of the offenses described in R.C.

---

[1] The second and fifth assignments of error read as follows, respectively:

"The trial court erred to the substantial prejudice of the accused by allowing the state of Ohio to impeach the character of the accused, who neither testified nor offered testimony on his own behalf."

"The trial court erred in permitting the state of Ohio to inform the jury of defendant-appellant's prior conviction when such prior conviction was not competent to enhance the seriousness of the crime charged in the indictment."

2925.03, and the mere reference to that section does not lead to a determination of the drug, the offense, or the degree of the offense.

Furthermore, the verdict cannot be saved by use of R.C. 2945.75, which provides that when an additional element raises an offense to one of more serious (greater) degree, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged, unless the verdict states either the degree of the offense of which the defendant is found guilty or the presence of the additional element. An example of such an "additional" element is the prior conviction of a felony drug abuse offense when the accused is guilty of sale of a controlled substance of Schedule II, as discussed in Part II(A) above. In the instant verdict, the missing element is one that defines the offense and its degree in the first instance; it is not an "additional" element that increases the degree of the offense, but an "essential" element determining what offense was committed. R.C. 2945.75 does not apply to the verdict *sub judice.*

Since the defect is not curable and the verdict cannot be given any force or effect, it is void. A verdict is void if its import is (by necessity) in doubt, or if it is unresponsive to the issues submitted to the jury. See *State* v. *McNicol* (1944), 143 Ohio St. 39 [27 O.O. 569], paragraph two of the syllabus; *State* v. *Winbush* (1975), 44 Ohio App. 2d 256 [73 O.O.2d 257]. Examples of void verdicts are found in *Fox* v. *State* (1878), 34 Ohio St. 377; *Dick* v. *State* (1854), 3 Ohio St. 89; *Woodford* v. *State* (1853), 1 Ohio St. 427. The verdict *sub judice* fails to state the classification of the drug involved and is therefore void, because its import is clearly in doubt and it is unresponsive to the issue submitted to the jury.

The verdict *sub judice* should not have been received; the fourth assignment of error has merit.[2] It could not support the sentence; the third assignment of error has merit.[3] These errors were plain errors.

We conclude that the Double Jeopardy Clauses of the Ohio and the United States Constitutions do not preclude a second trial of this defendant under the first count of the indictment. The jury did not reach a final conclusion because it failed either to name the drug involved in the sale or to designate its classification within the five Schedules. There is no way to tell what offense was committed. This inconclusiveness distinguishes the instant case from *State* v. *English* (1985), 21 Ohio App. 3d 130, in which we decided that despite a mistake in the verdict, that jury had reached a final conclusion on the merits of the issue presented to it. That jury brought in a verdict of guilty of burglary despite the fact that the only offense established by the evidence was aggravated burglary.

There being no final conclusion on the merits of the charge against Reed, the original jeopardy under the first count was not terminated, and the Double Jeopardy Clauses do not bar further prosecution. Cf. *Richardson* v. *United States* (1984), ____ U.S. ____, 82 L. Ed. 2d 242; *Bullington* v. *Missouri* (1981), 451 U.S. 430.

## IV

The admission of evidence about an accused's refusal to talk and his maintenance of silence after he had been arrested and given the *Miranda* warn-

---

[2] The fourth assignment of error reads:

"The trial court erred in receiving a verdict which was patently incorrect in that it found defendant-appellant guilty of an offense for which he was not charged."

[3] The third assignment of error reads:

"The trial court erred to the prejudice of defendant-appellant in sentencing the defendant-appellant pursuant to Section 2925.03(C)(1) of the Ohio Revised Code."

ings is found to be prejudicial error. *State* v. *Elyel* (Mar. 21, 1984), Hamilton App. No. C-830403, unreported. The probative value of silence under the circumstances is inconsequential. It is not relevant evidence under Evid. R. 401, when no issue has been raised about whether defendant made any statement at all, and it is not admissible under Evid. R. 402. Further, whatever probative value it might be said to have is outweighed by its unfair prejudice, under Evid. R. 403(A)

We believe that defendant's objection to this evidence was sufficient to preserve the claim of error for review on appeal.

The first assignment of error contends that the court erred in admitting evidence about defendant's post-*Miranda* silence. We sustain it.

### V

In his sixth assignment of error, defendant argues that "[t]he verdict was contrary to law in that it was against the manifest weight of the evidence." We disagree. There were inconsistencies in the state's case, the most glaring being the unexplained discrepancy between the number of tablets seized and the number delivered for testing. Nevertheless, after reviewing the evidence and considering all reasonable inferences, we conclude not only that there is "substantial evidence upon which a jury could reasonably conclude that all the elements of [the] * * * offense have been proven beyond a reasonable doubt," *State* v. *Eley* (1978), 56 Ohio St. 2d 169 [10 O.O.3d 340], syllabus, but also that the jury did not lose its way or create such a manifest miscarriage of justice that the conviction must be reversed. *Tibbs* v. *Florida* (1982), 457 U.S. 31; *State* v. *Petro* (1947), 148 Ohio St. 473 [36 O.O. 152].

### VI

We reverse the judgment below and remand this case for further proceedings.

*Judgment reversed*
*and cause remanded.*

SHANNON, P.J., and KLUSMEIER, J., concur.