83 P.3d 410 (2004)
150 Wash.2d 774
STATE of Washington, Respondent,
v.
Jay Lawrence GOODMAN, Petitioner.
No. 73533-6.
Supreme Court of Washington, En Banc.
Argued October 28, 2003.
Decided January 15, 2004.
*411 James Egan, Kennewick, for Petitioner.
Andrew K. Miller, Benton County Prosecutor, Terry Bloor, Deputy County Prosecutor, for Respondent.
SANDERS, J.
Petitioner Jay Goodman challenges his conviction of possession of a controlled substance with intent to deliver in violation of *412 RCW 69.50.401(a). The amended information upon which he was convicted identified the controlled substance as "meth" rather than the full name "methamphetamine," though the original information did fully identify the specific controlled substance. The Court of Appeals affirmed in a partially published opinion, holding the prosecution need not identify in the information the specific controlled substance which forms the basis for a single RCW 69.50.401(a) violation. State v. Goodman, 114 Wash.App. 602, 59 P.3d 696 (2002).
We disagree with the Court of Appeals as its holding is contrary to United States Supreme Court precedent. When the identity of the controlled substance increases the statutory maximum sentence of which the defendant may face upon conviction, that identity is an essential element of the crime and it must be included in the charging document. However, the charging document here is nonetheless sufficient under the liberal standard of review we employ when the information is challenged for the first time on appeal. We also reject Goodman's argument that the evidence was insufficient to find the element of intent to deliver. As such, we affirm his conviction.

FACTS AND PROCEDURAL HISTORY
On August 7, 2001, the Tri City Metro Drug Task Force (Metro) executed a controlled buy which involved a confidential informant (CI) and one Yvonne Estavillo. Metro verified before the controlled buy that the CI did not possess any controlled substances either on his person or in his automobile. The CI and Estavillo, under Metro surveillance, traveled to a house after meeting at Westgate Elementary School. After leaving the residence the CI returned to Metro four baggies of white powder.[1] The four baggies, each bearing a green "Playboy" bunny logo, tested positive for methamphetamine, totaling 2.0 grams. Clerk's Papers (CP) at 22, Finding of Fact (FF) 17-18. This led Metro to procure and execute a search warrant for the house at which the controlled buy took place. The search warrant extended to all rooms in the house.
Goodman, though not the owner of the house, lived in the southeast bedroom.[2] During the search the police found an Altoids tin which contained six baggies of a white powder substance, weighing a total of 2.8 grams. CP at 21, FF 6; Ex. 4. The Washington State Crime Laboratory tested only three of those baggies, but each tested positive for methamphetamine. Detectives also found another tin in the bedroom, which contained a substance later determined to be methamphetamine. Moreover, detectives discovered a safe in the room containing more baggies, a scale, a blue cloth, and a package labeled "accessory kit." CP at 21, FF 11; Ex. 5.
The State charged Goodman in its first information of "the crime of, POSSESSION WITH INTENT TO DELIVER A CONTROLLED SUBSTANCE, METHAMPHETAMINE." CP at 46. The information alleged Goodman, "in violation of RCW 69.50.401(a), did unlawfully possess with intent to deliver a controlled substance, to wit: Methamphetamine." Id. The parties stipulated the house was located within 1,000 feet of a local elementary school, which prompted the State to file an amended information. The amended information included the school zone allegation but phrased the violation of RCW 69.50.401(a) as "did knowingly and unlawfully possess a controlled substance with intent to deliver, to wit: meth." CP at 26.
Goodman waived his right to a jury and a bench trial was held on October 15, 2001, with the parties stipulating to the facts. The court found Detective Didion would testify that 3.5 grams (one-eighth of an ounce, otherwise known as an "eight-ball") was the upper-limit of personal consumption, yet it was still common for sales to involve quantities below that amount. The court relied on the August 7 sale which involved only 2.0 grams to infer the amount of methamphetamine *413 found in Goodman's bedroom (2.8 grams) was consistent with the sale of methamphetamine. The court found the evidence seized from Goodman's roomthe baggies, scale, individually packaged methamphetamine, and the linkage between the August 7 sale and the evidence from Goodman's bedroomwere "consistent with the sale of methamphetamine." CP at 22, FF 21. Though Goodman argued the evidence was insufficient to support the element of intent, the court found Goodman guilty of possession with intent to deliver methamphetamine in violation of former RCW 69.50.401(a). The court sentenced Goodman to 65 months, an enhanced sentence for violating the Uniform Controlled Substances Act within a protected zone.
Goodman appealed his conviction to Division Three of the Court of Appeals, which affirmed in a partially published opinion. The published portion of the opinion rejected Goodman's argument that the specific identity of the controlled substance is an essential element of possession with intent to deliver. Goodman, 114 Wash.App. at 604, 59 P.3d 696. The court characterized the issue as "unique," and held the State did not have to allege or prove the specific controlled substance possessed by the defendant. Id. at 604, 608, 59 P.3d 696. We granted Goodman's petition for review. 149 Wash.2d 1002, 67 P.3d 1096 (2003).

ISSUES
I. Whether the evidence was sufficient to convict Goodman of possession of methamphetamine with intent to deliver, and if not, whether Goodman's sentence enhancement for possession with intent to deliver within 1,000 feet of a school zone should be negated.
II. Whether the amended information was defective because it identified the specific controlled substance possessed by Goodman to be "meth" instead of "methamphetamine," and if so, whether Goodman can show he was prejudiced by the inartful language.

ANALYSIS
I. Sufficiency of the Evidence
We review the evidence in a light most favorable to the State to determine "whether ... any rational trier of fact could have found guilt beyond a reasonable doubt" where a criminal defendant challenges the sufficiency of the evidence. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992); see also State v. DeVries, 149 Wash.2d 842, 849, 72 P.3d 748 (2003); State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Salinas, 119 Wash.2d at 201, 829 P.2d 1068. "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id. Circumstantial evidence and direct evidence carry equal weight when reviewed by an appellate court. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). Moreover, "specific criminal intent of the accused may be inferred from the conduct where it is plainly indicated as a matter of logical probability." Id.
As a preliminary matter, Goodman attempts to raise three objections to the trial court's findings of fact. See Br. of Appellant at 8. However, he never assigned specific error to any of the trial court's findings. See Br. of Appellant at 1. A party must assign error to a finding of fact for it to be considered on review. See Eggert v. Vincent, 44 Wash.App. 851, 854, 723 P.2d 527 (1986). Indeed, Goodman stipulated to all evidence at trial. Consequently, the trial court's findings are verities on appeal. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994).
Moreover, RAP 10.3(g) provides in relevant part:
A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

*414 (Emphasis added.) Even if we construed these objections as assignments of error, Goodman provides no argument to support his assertions, see Br. of Appellant at 9-15, and therefore waives the argument. Accord Milligan v. Thompson, 110 Wash.App. 628, 635, 42 P.3d 418 (2002) ("A party waives an assignment of error not adequately argued in its brief.").
Goodman makes one argument, though, that merits attention. He argues finding of fact 7 incorrectly references the amount of methamphetamine found in his bedroom to be 2.8 grams. That finding provides: "Three of those baggies were tested by the State Crime Laboratory. The test was positive for methamphetamine, with a weight of 2.8 grams." CP at 21, FF 7. The evidence clearly shows the aggregate weight of the six baggies was 2.8 grams but that the Washington State Crime Laboratory tested only three of those baggies for methamphetamine. See Ex. 4 (Wash. State Patrol Crime Lab Report). Thus, the State proved only three of those baggies contained methamphetamine. However, this does not change the result we reach.
At issue here is whether the evidence was sufficient to prove intent to deliver. Goodman argues the stipulated facts are insufficient to prove intent. The statutory elements of possession of controlled substance with intent to deliver are (1) unlawful possession of (2) a controlled substance with (3) intent to deliver. RCW 69.50.401(a)(1)(ii); State v. Atsbeha, 142 Wash.2d 904, 918, 16 P.3d 626 (2001); State v. Sims, 119 Wash.2d 138, 141, 829 P.2d 1075 (1992).
Goodman primarily argues "that a sizeable amount of drugs must be a starting point in any analysis of intent to deliver." Br. of Appellant at 11; Pet. for Review at 12-13. This argument lacks merit. First, it has never been suggested by any court that a large amount of a controlled substance is required to convict a person of intent to deliver. Accord State v. Zunker, 112 Wash. App. 130, 136, 48 P.3d 344 (2002), review denied, 148 Wash.2d 1012, 62 P.3d 890 (2003). It is firmly established Washington law that mere possession of a controlled substance is generally insufficient to establish an inference of intent to deliver. State v. Darden, 145 Wash.2d 612, 624, 41 P.3d 1189 (2002); see also State v. Brown, 68 Wash.App. 480, 483, 843 P.2d 1098 (1993). Rather, at least one additional factor must be present. Zunker, 112 Wash.App. at 136, 48 P.3d 344. In Zunker the Court of Appeals affirmed the conviction of a man arrested while possessing only 2.0 grams of methamphetamine. Id. at 133, 48 P.3d 344. While recognizing the amount of methamphetamine was insufficient by itself to prove the intent to deliver element, the court cited the "scales bearing meth residue, notebooks with names and credit card numbers, a cell phone battery, and meth ingredients" as sufficient evidence to support a conviction. Id. at 136, 48 P.3d 344. Even though evidence may be consistent with personal use, it is the duty of the fact finder, not the appellate court, to weigh the evidence. Id. at 136-37, 48 P.3d 344.
Here the police found six baggies of a white powder substance totaling 2.8 grams; three baggies tested positive for methamphetamine. The police also found a scale, additional baggies, and an accessory kit in a safe located in Goodman's bedroom. The police also found three vials and another small baggie, which contained another 0.5 grams of methamphetamine. Moreover, the trial court found a link between the August 7 controlled buy and the items seized from Goodman's room, namely baggies with identical logos involved in each instance. The amount of methamphetamine alone may not have been sufficient to convict Goodman, but the evidence as a whole was sufficient to allow a rational jury to convict Goodman beyond a reasonable doubt. See Salinas, 119 Wash.2d at 201, 829 P.2d 1068.[3] Because we *415 conclude the evidence was sufficient, we need not address Goodman's argument that the school zone sentence enhancement does not apply to him, as that argument rests on a finding of insufficient evidence.
II. Amended Information
We next address Goodman's challenge to the amended information. Goodman makes two separate arguments: first, he argues the amended information lacks the essential elements of a violation of the Uniform Controlled Substances Act, chapter 69.50 RCW; second, he argues "meth" "could be an abbreviation" of other controlled substances, the possession of which carries a lesser sentence than possession with intent to deliver methamphetamine. Br. of Appellant at 1, 17-23.
A charging document is constitutionally sufficient under the Sixth Amendment to the United States Constitution[4] and article I, section 22 of our constitution[5] only if it includes all "essential elements" of the crime, regardless of whether they are statutory or nonstatutory. State v. Vangerpen, 125 Wash.2d 782, 787, 888 P.2d 1177 (1995). The purpose of the well-established "essential elements" rule is to apprise the defendant of the charges against him or her and properly allow the accused to present a defense. Id.
A. Essential Elements
The Court of Appeals held the information need not name the specific controlled substance. Specifically, the court stated:
Mr. Goodman's list of controlled substances containing the syllable "meth" undercuts his own argument because possession of any one of them is a crime under RCW 69.50.401(a). Although the specific controlled substance the defendant allegedly manufactured, delivered, or intended to deliver may result in a different sentence, 5 or 10 years, the core crime is the same. Naming the specific controlled substance in an information alleging a single violation of RCW 69.50.401(a) is surplusage.

Goodman, 114 Wash.App. at 608, 59 P.3d 696 (emphasis added) (citations omitted). This view, however, is wholly inconsistent with United States Supreme Court precedent. That Court recently held "any fact [other than a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Apprendi held unconstitutional a New Jersey hate crime law which allowed the trial court to increase the maximum sentence of a criminal if it found by a preponderance of the evidence that the crime was executed with the purpose to intimidate a group of individuals based on race, gender, or other characteristics. Id. at 468-69, 497, 120 S.Ct. 2348; see also Ring v. Arizona, 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (holding Arizona's statutory factors necessary for imposition of death penalty were the "`functional equivalent of an element of a greater offense'" (quoting Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348)).
It is clear under Apprendi the identity of the controlled substance is an element *416 of the offense where it aggravates the maximum sentence with which the court may sentence a defendant. Apprendi, 530 U.S. at 490, 120 S.Ct. 2348.[6] Axiomatic in Washington law is the requirement that the charging document must "allege facts supporting every element of the offense" in order to be constitutionally sufficient. State v. Leach, 113 Wash.2d 679, 689, 782 P.2d 552 (1989).
Goodman's conviction for possession with intent to deliver methamphetamine carried a maximum sentence of 10 years. RCW 69.50.401(a)(1)(ii).[7] Had he been convicted of possessing a controlled substance other than those carrying the 10-year maximum he would have been imprisoned for no more than 5 years. RCW 69.50.401(a)(1)(iii). Goodman was sentenced to 65 months in prison, 5 months more than the maximum limit for a violation of RCW 69.50.401(a)(1)(iii). Because the statutory maximum sentence increased depending on which controlled substance Goodman possessed, the identity of that controlled substance was a "fact that increases the penalty for a crime beyond the prescribed statutory maximum." Apprendi, 530 U.S. at 490, 120 S.Ct. 2348. Therefore, the prosecution was obligated to allege and prove the substance Goodman possessed was methamphetamine.
It is important to note the distinction between this conclusion and the question passed in State v. DeVries, 149 Wash.2d 842, 72 P.3d 748 (2003). In DeVries we declined to speculate "[w]hether the State carried the burden of proving that she knew she was delivering an amphetamine or simply any controlled substance" as the issue was not before us. DeVries, 149 Wash.2d at 850 n. 4, 72 P.3d 748. We need not speculate in this case whether the State must prove beyond a reasonable doubt that the defendant knew the specific identity of the controlled substance.[8] However, squarely before us is whether the State must allege and prove the specific identity of the controlled substance or whether the State must prove the substance is merely a controlled one. We conclude under Apprendi the State must allege the specific identity of the controlled substance. Consequently, the reasoning employed by the Court of Appeals is contrary to United States Supreme Court precedent and is hereby disapproved.
B. Adequacy of the Information
However, this does not compel reversal. Goodman never challenged the information at trial, which requires us to construe the amended information under the more liberal standard enunciated in State v. Kjorsvik, 117 Wash.2d 93, 102, 812 P.2d 86 (1991).
In Kjorsvik the defendant challenged the information for the first time on appeal, arguing its failure to include the common law element of intent negated his conviction of robbery. Id. at 96, 812 P.2d 86. Though we held the charging document must contain all essential elements to the crime, *417 we also recognized a different standard of review when the defendant initially challenges the charging document on appeal. Id. at 101-02, 812 P.2d 86. In such cases we construe the charging documents more liberally in favor of validity than does a trial court when the charging documents are challenged initially or during trial. Id. at 102, 812 P.2d 86.[9] We adopted a two-pronged inquiry in such cases: "(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?" Id. at 105-06, 812 P.2d 86. This method of liberal construction permits us to fairly infer the apparent missing element from the charging document's language. Id. at 104, 812 P.2d 86.
1. Necessary Facts
Under the first Kjorsvik prong we look solely to the face of the charging instrument. Id. at 106, 812 P.2d 86. "Words in a charging document are read as a whole, construed according to common sense, and include facts which are necessarily implied." Id. at 109, 812 P.2d 86 (emphasis added); see also State v. Taylor, 140 Wash.2d 229, 243, 996 P.2d 571 (2000). If the necessary elements are neither found nor fairly implied in the charging document, "we presume prejudice and reverse without reaching the question of prejudice." State v. McCarty, 140 Wash.2d 420, 425, 998 P.2d 296 (2000).
Here the information accused Goodman of "knowingly and unlawfully possess[ing] a controlled substance with intent to deliver, to wit: meth." CP at 26 (emphasis added). Goodman argues "meth" is vague, as it "could be abbreviated" for various other controlled substances which carry a lesser punishment than methamphetamine. Br. of Appellant at 17-23; Pet. for Review at 19-24.
Methamphetamine, though, is commonly referred to as "meth." See Zunker, 112 Wash.App. at 136, 48 P.3d 344 (noting the defendant's possession of "scales bearing meth residue ... and meth ingredients" (emphasis added)). Moreover, the term "meth lab" is the common short form for a laboratory used to manufacture methamphetamine. See, e.g., State v. Davis, 117 Wash.App. 702, 704, 72 P.3d 1134 (2003) (noting detectives who "specialize[] in investigating methamphetamine laboratories (meth labs)" (emphasis added)); State v. Wood, 117 Wash. App. 207, 209, 70 P.3d 151 (2003) ("Evidence of the meth lab was immediately visible to the officers." (emphasis added)). While Goodman cites numerous controlled substances containing the derivative "meth," he points to no authority supporting the view that "meth" is used for anything other than "methamphetamine." Moreover, as the state statute governing the sufficiency of charging documents provides:
The indictment or information is sufficient if it can be understood therefrom
. . . .
(6) That the act or omission charged as the crime is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended.

RCW 10.37.050(6) (emphasis added).
Since "meth" "construed according to common sense" can be "fairly implied" to mean "methamphetamine," the inartful language is not prejudicial as a matter of law. See Kjorsvik, 117 Wash.2d at 104, 812 P.2d 86 (quoting *418 Hagner v. United States, 285 U.S. 427, 433, 52 S.Ct. 417, 76 L.Ed. 861 (1932)), 109. Consequently, we shift our inquiry to the second Kjorsvik prong.
2. Actual Prejudice
The second Kjorsvik prong requires the defendant to prove he was actually prejudiced as a result of the vague language used in the information, which in this type of case means the defendant did not "actually receive[] notice of the charges he or she must have been prepared to defend against." Id. at 106, 812 P.2d 86. Unlike the first prong, the court may look outside the information to determine whether the defendant suffered actual prejudice. Id. For example the Kjorsvik court recognized the possibility "that other circumstances of the charging process can reasonably inform the defendant in a timely manner of the nature of the charges." Id.
The first information brought by the State charged Goodman with "unlawfully possess[ing] with intent to deliver a controlled substance, to wit: Methamphetamine." CP at 46 (emphasis added). Moreover, the arrest warrant specifically identified "methamphetamine" as the controlled substance Goodman was alleged to have possessed with the intent to deliver. CP at 39. Goodman suffered no prejudice by the State's use of "meth" instead of "methamphetamine." He had actual notice of the identity of the controlled substance that formed the basis of the charge against him, which is the goal of the charging document. See City of Auburn v. Brooke, 119 Wash.2d 623, 629, 836 P.2d 212 (1992) ("The primary purpose [of charging documents] is to give notice to an accused so a defense can be prepared."); see also Kjorsvik, 117 Wash.2d at 97, 812 P.2d 86.

CONCLUSION
To the extent the Court of Appeals' published opinion excuses the State from alleging the specific controlled substance in an information, it is hereby disapproved. However, we affirm the Court of Appeals in all other respects.
WE CONCUR: ALEXANDER, C.J., and JOHNSON, MADSEN, IRELAND, BRIDGE, OWENS, FAIRHURST, JJ.
CHAMBERS, J. (concurring).
I fully concur with the majority. I write separately to clarify the scope of our holding.
Adequate notice of the specific crime charged is an absolute requirement of law. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; see also State v. Vangerpen, 125 Wash.2d 782, 787, 888 P.2d 1177 (1995) ("a charging document is constitutionally adequate only if all essential elements of a crime, statutory and nonstatutory, are included in the document so as to apprise the accused of the charges against him"). I concur with the majority that the specific substance alleged must be specifically charged. Majority at 416; accord Louisiana in the Interests of J.W., 597 So.2d 1056, 1058 (La. Ct.App.1992) ("The identity of the drug is an essential element of the charged offense"); State v. Reed, 23 Ohio App.3d 119, 122, 491 N.E.2d 723 (1985). But the law does not require highly technical descriptions of the drug, and adequate notice does not require the precise chemical formula. So long as the information is sufficiently detailed to put the accused on notice of the drug charged, scrivener errors or lack of scientific certainty is not per se fatal.
I concur.
NOTES
[1] The State elected to try Estavillo separately. The charges against her are not at issue here.
[2] The parties stipulated that the owner of the house, Wilma Mitchell, would have testified that Goodman lived in that room. The police also found documents in the room belonging to Goodman.
[3] Goodman makes several other arguments why the evidence is insufficient, including: (1) the State never established ownership of the safe in which the scale, unused baggies, and accessory kit were found; (2) baggies are used not only for distribution purposes but also for personal storage; (3) individually packaged methamphetamine is not indicative that a controlled substance is held for sale; and (4) the similarity between the baggies found in Goodman's bedroom and the baggies used in the August 7 controlled buy "[a]t best ... denotes a common source." Pet. for Review at 11-12. Each of these arguments is without merit because we make all reasonable inferences in the State's favor and against Goodman. See Salinas, 119 Wash.2d at 201, 829 P.2d 1068. It is reasonable to conclude Goodman owned the safe located in his own bedroom. It is also reasonable to conclude that several individual packages indicate potential future transactions involving each package. Moreover, while it is reasonable to conclude individual packages may be used later for personal consumption, it is also reasonable to conclude individual packages of methamphetamine are held for sale. This inference must lean toward the latter scenario, which is in the State's favor and strongly against Goodman. Id.
[4] "In all criminal prosecutions, the accused shall... be informed of the nature and cause of the accusation." U.S. CONST. amend. VI.
[5] "In criminal prosecutions the accused shall have the right ... to demand the nature and cause of the accusation against him." CONST. art. I, § 22.
[6] State v. Gore, 143 Wash.2d 288, 21 P.3d 262 (2001), does not suggest the contrary. There we held the factual basis for aggravating factors supporting exceptional sentences did not have to be charged and submitted to the jury when such facts did not increase the statutory maximum sentence for the crime but rather increased the sentence within the prescribed statutory range. Id. at 314, 21 P.3d 262; accord Harris v. United States, 536 U.S. 545, 557, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion of Kennedy, J.) (holding fact which increases mandatory minimum sentence is a sentencing factor and not an element, and therefore need not be submitted to jury).
[7] Possession with intent to deliver any other controlled substances such as amphetamine or any Schedule I or II controlled substance which is a narcotic drug or flunitrazepam as classified in Schedule IV also carries a 10 year maximum. See RCW 69.50.401(a)(1)(i), (ii).
[8] Nor is this result inconsistent with State v. Nunez-Martinez, 90 Wash.App. 250, 951 P.2d 823 (1998), where the court held the State did not have to allege or prove that the defendant knew he was delivering amphetamine. Id. at 255-56, 951 P.2d 823. This result stems from the statutory ambiguity of whether the defendant must know the specific identity of the controlled substance in order to be convicted under RCW 69.50.401(a). See 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 50.06, cmt. at 645 (2d ed.1994), quoted in Nunez-Martinez, 90 Wash. App. at 253-54 & n. 6, 951 P.2d 823.
[9] Citing Professor LaFave, we noted this standard discourages "`sandbagging,'" i.e., recognizing a defective charging document and raising the issue for the first time on appeal, when a challenge at the trial level would have resulted in an amended charge. Kjorsvik, 117 Wash.2d at 103 & n. 19, 812 P.2d 86 (citing 2 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 19.2, at 442 & n. 36 (1984)). Where the information is challenged at trial, the court must strictly construe the information. State v. Johnson, 119 Wash.2d 143, 149-50, 829 P.2d 1078 (1992). Thus, our holding is strictly limited to those challenges under the more liberal Kjorsvik standard, namely those challenges to charging documents raised for the first time on appeal.