

2016 NOV 14 AM 9:53

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73842-9-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| JIMMY JAMES THOMPSON, | ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) | FILED: <u>November 14, 2016</u> |

SPEARMAN, J. — Evidence is sufficient to support a finding of guilt if, when viewed in the light most favorable to the State, it supports a rational jury's finding that each element of the charged offense has been proved beyond a reasonable doubt. Here, Jimmy Thompson was convicted of theft of a motor vehicle. On appeal, he argues that the circumstantial evidence presented at his trial is insufficient to support the guilty finding. We disagree and affirm.

## FACTS

On the morning of May 6, 2015, electrician Kennan Southworth reported to a jobsite at 4300 Roosevelt Way Northeast, Seattle, in his work van. Southworth worked for Pride Electric. His white van had a blue and red stripe

down the side with "Pride Electric" in blue and red letters. [1] VRP at 17. At around 3:00 a.m., he arrived at the jobsite, parked his van outside, and went inside the building. In the next two hours, he went back and forth to his van multiple times. He locked the van each time he went back inside the building.

At around 5:15 a.m., Southworth returned to his van after being inside the building for about two minutes. He saw that his van was gone. Southworth turned around and saw the van drive southbound on Roosevelt Avenue. He called his boss to report that the vehicle was missing, and then called 911 to report the stolen van to police.

Seattle Police Officers Joel Gingrey and Jason Hoppers were several blocks away in their patrol car. They received the report of the missing vehicle at 5:19 a.m. They immediately began searching in the area close to where the van had been parked. The officers found it in the 900 block of 42nd Street, which was only a few blocks away from Southworth's jobsite.

Two people were standing next to the van. Upon the arrival of the police car, both of them immediately jumped over a fence and fled. Officer Hoppers exited the patrol car yelling, "'[s]top, police'" and pursued Thompson on foot. VRP at 108. Officer Gingrey remained in the patrol car and drove around the block. Officer Hoppers observed Thompson run and jump over several fences. At 5:25 a.m., Officer Hoppers detained Thompson a couple of blocks away from where he was initially seen next to the van.. The other person was never found.

---

[1] All verbatim report of proceeding (VRP) citations are to the July 21, 2015 proceedings, unless otherwise noted.

2

After Thompson was in custody, Officers Hoppers and Gingrey returned to the Pride Electric van. It was running even though there was no key in the ignition. Someone had pried open the driver's side door lock and removed the plastic around the ignition. The sliding door was open and there were tools on the ground. A Honda was parked next to the van with its engine running. It had Pride Electric tools on its front seat.

Thompson was charged with theft of a motor vehicle, and in the alternative, possession of a stolen vehicle. The jury was instructed that they could find Thompson guilty as either a principal or an accomplice. The jury convicted Thompson of theft of a motor vehicle.

## DISCUSSION

Thompson argues that the evidence is insufficient to support his conviction for theft of a motor vehicle. Evidence is sufficient when, viewed in the light most favorable to the State, it supports a rational fact finder's finding of guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (citing State v. Green, 94 Wn.2d 216-222, 616 P.2d 628 (1980)). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences drawn from it. Salinas, 119 Wn.2d at 201. On review, circumstantial and direct evidence carry equal weight. State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004) (citing State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980)).

The trial court instructed the jury that to convict Thompson of motor vehicle theft, the State was required to prove the elements of that crime beyond a

reasonable doubt. A person commits motor vehicle theft if he wrongfully obtains or exerts unauthorized control over the motor vehicle of another with intent to deprive the other person of the vehicle. RCW 9A.56.020(1)(a); RCW 9A.56.065. The jury was also instructed that Thompson could be found guilty as a principal or as an accomplice. An accomplice to a crime is legally accountable for the conduct of another person. RCW 9A.08.020. An accomplice is someone who, "[w]ith knowledge that it will promote or facilitate the commission of the crime ... [a]ids or agrees to aid such other person in planning or committing it." RCW 9A.08.020(3). A person who is present at the scene and ready to assist is aiding the commission of the crime. State v. Robinson, 35 Wn. App. 898, 903, 671 P.2d 256 (1983). But the State must show more than mere presence and knowledge of the criminal activity of another to establish that a person is an accomplice. State v. Rotunno, 95 Wn.2d 931, 933, 631 P.2d 951 (1981).

The evidence submitted at trial shows that Southworth called 911 about two minutes after the van was stolen. Within minutes of that call, Thompson and another individual were seen standing on each side of the van just a few blocks from where the theft occurred. There were no other people nearby. The van's engine was running and the sliding door was open. Immediately upon seeing the officers, Thompson jumped over a fence and fled. He continued to flee after Officer Hoppers yelled, "'stop, police.'" Six minutes after the van was reported stolen, Thompson was detained. The lock on the van's driver side door showed signs that it had been opened by force. The ignition also showed signs of force. Tools and equipment belonging to Pride Electric were on the ground next to the

4

van and inside a Honda, which was parked alongside the van with its engine running.

The short timeframe, proximity of Thompson to the van and to the location of the theft, the condition of the van and the placement of the stolen tools, as well as his flight from the scene, all support a reasonable inference that Thompson was involved in the theft as either a principal or an accomplice. Viewing the evidence in the light most favorable to the State, a rational trier of fact could find the elements of motor vehicle theft beyond a reasonable doubt.

Thompson submits a statement of additional grounds under RAP 10.10, in which he raises two issues. The first issue relates to the actions of his defense counsel and the second to his lack of opportunity to testify. But because these claims are based on facts or evidence not in the record before us, we cannot consider them. The claims may be properly pursued in a personal restraint petition, but not in a statement of additional grounds. State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

Costs on Appeal

Thompson argues that we should not impose appeal costs against him because he is indigent. The State argues that there is insufficient information about Thompson's financial situation to decline to impose appeal costs.

Appellate courts may require an adult offender convicted of an offense to pay appellate costs. RCW 10.73.160(1). The commissioner or clerk will award costs to the State if the State is the substantially prevailing party on appeal, "unless the appellate court directs otherwise in its decision terminating review."

5

RAP 14.2. A determination of a criminal defendant's indigency is entrusted to the trial judge whose finding of indigency we respect unless we are shown good cause not to do so. State v. Sinclair, 192 Wn. App. 380, 393, 367 P.3d 612 review denied, 185 Wn.2d 1034, 377 P.3d 733 (2016). We "give a party the benefits of an order of indigency throughout the review unless the trial court finds the party's financial condition has improved to the extent that the party is no longer indigent." RAP 15.2(f).

The State argues that we should abandon the approach set out in Sinclair because the order of indigency does not have sufficient information about Thompson's future ability to pay. However, Sinclair makes clear that during trial and sentencing, both parties have access to information about "the defendant's age, family, education, employment history, criminal history, and the length of the current sentence" that influence the State's discretionary decision to seek costs. Sinclair, 192 Wn. App. at 391-92.

Here, the trial court issued an order finding Thompson indigent and authorizing him to appeal in forma pauperis. The trial court has not found that his financial condition has improved or is likely to improve. We therefore presume that Thompson remains indigent. Thompson's sentence is forty-three months. He has felony convictions which may limit his ability to find employment in the future. He owes $1,274.45 in legal financial obligations. The State does not point to anything in the record suggesting that Thompson's financial condition is likely to improve. Under these circumstances, we conclude that an award of appellate costs to the State is not appropriate.

No. 73842-9-I/7

Affirm.

WE CONCUR:

Spearman, J.

Cox, J.

Leach, J.

7