IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36237-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BENNY GONZALEZ SEDANO, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Benny Sedano appeals after a jury found him guilty of two counts of felony violation of a no-contact order. He argues the evidence was insufficient to convict him of the charges, the trial court abused its discretion in admitting the recorded telephone calls in question, and the State committed prosecutorial misconduct. We disagree with his arguments and affirm.

## FACTS

A no-contact order was entered against Benny Sedano to protect Lisa Eaton. The order was effective September 14, 2017, and expired on September 14, 2018.

Sedano was housed in the Chelan County jail in December 2017. As part of an unrelated case, Detective Aaron Seabright of the Chelan County Sheriff's Office was monitoring jail telephone calls of Sedano and his cell mate, James Edward Salvador.

Detective Seabright believed that two telephone calls were made from Sedano to Ms. Eaton, in violation of the no-contact order. The State charged Sedano with two counts—felony violation of a court order, domestic violence—for calls on December 22 and 23, 2017. Sedano proceeded to trial.

At trial, the State first called Lori Blanchard, chief of operations with the Chelan County Clerk's Office. Ms. Blanchard testified that the no-contact order was in effect at the time of the alleged telephone calls, Sedano was the defendant/respondent on the order, Ms. Eaton was the protected party, and Sedano was in court when it was entered.

Next, the State called deputy director of the Chelan County jail, Ryan Wineinger. Director Wineinger is responsible for operations of the jail, including staffing, monitoring, and tracking inmates. He explained that when an inmate is initially booked into the jail, the telephone system records the inmate's vocal recitation of their own name and uses voice recognition software in order for each inmate to make outgoing calls. Each inmate has their own account and the voice recognition software is used to identify the inmate calling and to subtract the money from the appropriate account. Sometimes

2

this system is abused—as one inmate can pick up the phone, identify themselves, dial a number, and then hand the phone to another inmate to use.

The State then called Detective Seabright to admit recordings of the telephone calls in question. Before Detective Seabright could testify about the telephone calls, Sedano requested a voir dire outside the jury's presence to establish whether Detective Seabright could authenticate the calls. Sedano argued that neither he nor Ms. Eaton self-identified on the telephone calls, and Detective Seabright could not otherwise authenticate it was them on the telephone.

Detective Seabright testified out of the jury's presence that he had spoken to Sedano in person when he was arrested and had many contacts with him over the years as a patrol officer. Also, he listened to several of Sedano's telephone calls from jail in which he did self-identify. He never spoke to Ms. Eaton in person but listened to numerous telephone calls she made when she was incarcerated. Detective Seabright knew those telephone calls were from Ms. Eaton because she used her account, which required voice recognition.

Detective Seabright also explained that the content of the calls in question caused him to believe that the female's voice belonged to Ms. Eaton. First, although the female initially identified herself as Ms. Eaton's mother, while discussing criminal charges, the

3

female used the term "my attorney" and then corrected herself to say, "my daughter's attorney." Report of Proceedings (RP) at 86. Second, the female had specific knowledge about the jail system, which suggested an inmate's perspective. Third, the female called Sedano "babe" multiple times. RP at 86. Fourth, the female told Sedano that she did not shave her privates when she was in jail.

Sedano maintained his objection and insisted that Detective Seabright had no firsthand knowledge, and it was all based on telephone calls and comparisons. The trial court overruled the objection and allowed Detective Seabright to testify to the jury about the telephone calls.

Three calls were played for the jury. The first call was from December 23, 2017, and Detective Seabright testified that he recognized the voices on the telephone call as Sedano and Ms. Eaton. Then, the State played a call from December 22, 2017. Detective Seabright opined that the voices on the telephone call were Sedano and Ms. Eaton. Finally, the State played a telephone call from December 17, 2017, and Detective Seabright identified the male caller as Sedano and the female as Ms. Eaton's mother. The telephone call placed on December 17, 2017, came from Sedano's jail account and he self-identified. The telephone calls placed on December 22 and 23, 2017, were made

from Sedano's cell mate's account, Mr. Salvador. All three telephone calls dialed the

same number—a number registered to Ms. Eaton's mother.

During closing argument, the State used the December 17, 2017 call from Sedano

to Ms. Eaton's mother to highlight the difference in that conversation from the two other

calls. In doing so, the State emphasized that this call was specifically from Sedano's jail

account. The State went on further to argue:

> You can just listen to these yourselves and hear that they're the same
> voices.
> . . . .
> You don't need anyone else to say that. You folks can put those pieces
> together yourselves even ignoring that and find that.

RP at 188-89, 197.

The jury returned a guilty verdict on both counts. Sedano timely appealed to this

court.

## ANALYSIS

As a preliminary matter, the State asks this court to order the trial court's decision

to stand because Sedano has not supplied an adequate record for review of this case on

appeal. Specifically, the State argues Sedano did not provide the jail telephone calls as

part of the record—and they are essential to the issues on appeal. The telephone calls

have been submitted as an exhibit on appeal. We are satisfied the record contains the

necessary evidence for consideration of the issues raised.

    1.        SUFFICIENCY OF THE EVIDENCE

Sedano first contends the State failed to present sufficient evidence for the jury to

convict him of violation of a no-contact order. We disagree.

When a defendant challenges the sufficiency of the evidence, the proper inquiry is

"whether, after viewing the evidence in the light most favorable to the State, any rational

trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119

Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence

must be drawn in favor of the State and interpreted most strongly against the defendant."

*Id.* In a challenge to the sufficiency of the evidence, circumstantial evidence and direct

evidence carry equal weight. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410

(2004).

To find Sedano guilty of violation of a court order—domestic violence—the jury

would have to find: (1) On December 22 and 23, 2017, there was a no-contact order

applicable to Sedano, (2) Sedano knew of the order, (3) that on or about said dates,

Sedano knowingly violated the order, (4) Sedano has twice been previously convicted for

violating provisions of a court order, and, (5) Sedano's act occurred in the State of

Washington.  Sedano challenges the sufficiency of one element—that he knowingly violated the order because the State presented insufficient evidence that it was him who called Ms. Eaton.

When viewing the evidence presented at trial in the light most favorable to the State and admitting the truth of the State's evidence, any rational trier of fact could have found Sedano guilty.  *Salinas*, 119 Wn.2d at 201.  Putting aside the issue of authentication, the testimony from Detective Seabright was that the telephone calls on December 22 and 23, 2017, were between Sedano and Ms. Eaton.  Assuming the truth of this evidence, a jury could have found Sedano guilty beyond a reasonable doubt.

2.    ADMISSION OF TELEPHONE CALLS

Sedano next contends the trial court abused its discretion by admitting the telephone call recordings because they were not authenticated.  We disagree.

Generally, a trial court's evidentiary rulings are reviewed for an abuse of discretion.  *In re Det. of Duncan*, 167 Wn.2d 398, 402, 219 P.3d 666 (2009).  "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"  *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

Evidence is admissible when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401; *see* ER 402. This threshold is very low. *State v. Briejer*, 172 Wn. App. 209, 225, 289 P.3d 698 (2012).

Authentication is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." ER 901(a). Voice authentication is provided for under ER 901. ER 901(a) provides: "The requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

ER 901(b) provides in relevant part:

**Illustrations.** By way of illustration only . . . the following examples of authentication . . . conform[ ] to the requirements of this Rule:
. . . .
(5) *Voice Identification.* Identification of a voice, whether heard first hand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

Because it is a preliminary question of admissibility, the rules of evidence do not limit what evidence can be offered for authentication. ER 104(a); *see Passovoy v. Nordstrom*, *Inc.*, 52 Wn. App. 166, 171, 758 P.2d 524 (1988). The identity of a party to a telephone conversation can be established through direct or circumstantial evidence.

*State v. Danielson*, 37 Wn. App. 469, 472, 681 P.2d 260 (1984). Courts should admit the

evidence if there is sufficient proof for a reasonable juror to find in favor of

authentication. *Passovoy*, 52 Wn. App. at 171.

### Sedano's Voice

Regarding Sedano's voice, Detective Seabright offered direct and circumstantial

evidence to establish that the two recordings in question were calls from Sedano.

Detective Seabright had spoken to Sedano in person when he was arrested and had many

contacts with Sedano over the years as a patrol officer. Detective Seabright also listened

to many of Sedano's telephone calls from jail in which he had to self-identify to pass the

voice recognition software. This direct and circumstantial evidence was enough to

support authentication that the male voice on the calls in question was Sedano.

### Ms. Eaton's Voice

Although Detective Seabright did not provide direct evidence of Ms. Eaton's

voice, we are convinced the overwhelming circumstantial evidence provided sufficient

proof for authentication. Detective Seabright listened to many of Ms. Eaton's telephone

calls when she was in jail—which required voice recognition and identification at the

beginning of the calls. Moreover, the conversation between Sedano and Ms. Eaton led

him to believe it was truly Ms. Eaton on the line. The female on the phone call claimed to

be Ms. Eaton's mother, but incidentally said "my attorney" and then corrected herself to say "my daughter's attorney." RP at 86. The female called Sedano "babe" multiple times. RP at 86. The female told Sedano she did not shave her privates while she was in jail. The female used unique vernacular of someone who had been incarcerated, and Ms. Eaton had been recently incarcerated.

Here, the evidence noted above was sufficient to establish authentication that the calls were what the State claimed them to be. Sedano's arguments about whether Detective Seabright correctly identified the callers on the telephone calls is an issue properly explored on cross-examination and ultimately decided by the jury. We conclude the trial court did not abuse its discretion by admitting the telephone calls.

3.     PROSECUTORIAL MISCONDUCT

Sedano lastly contends the State committed prosecutorial misconduct by misstating the law and misrepresenting the facts during its closing argument. We conclude Sedano waived the purported error by failing to object.

To prevail on a claim of prosecutorial misconduct, Sedano must establish "'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Thorgerson*, 172 Wn.2d 438, 442, 258

P.3d 43 (2011) (internal quotation marks omitted) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

To demonstrate prejudice, the defendant must show a substantial likelihood that the prosecutor's misconduct affected the jury's verdict. *Thorgerson*, 172 Wn.2d at 443. However, a failure to object to an improper remark waives review of the error unless the remark "'is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'" *Id.* (quoting *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)). In making that determination, the court "focus[es] less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012).

First, we address Sedano's contention that the State misrepresented the law during closing argument. Sedano alleges the State argued that it need not prove the identity of the voices. At closing, the State argued, "You can just listen to these yourselves and hear that they're the same voices," RP at 188-89; "You don't need anyone else to say that. You folks can put those pieces together yourselves even ignoring that and find that." RP at 197. Sedano did not object to these comments.

11

The State's remarks were not in the nature of burden-shifting. The State merely told the jury that they, as hearers of the voices, could use their own judgment about whose voices were recorded. But even if the comments could be misconstrued as Sedano argues, any resulting prejudice could have been cured with a timely objection and a curative instruction that the State had to prove the elements of the charges beyond a reasonable doubt. For this reason, we conclude Sedano waived this error.

Second, we address Sedano's contention that the State misrepresented the facts in its closing argument. Sedano argues the State misrepresented the facts by telling the jury that the telephone calls were made from Sedano's account, when the facts at trial showed that the calls were made from his cell mate's, Mr. Salvador's, account. The State argued:

> Remember this—as was testified, this phone call was made from Mr. Benny Sedano's account. So Mr. Benny Sedano's account placed this . . . call.
> The other two, December 22nd and 23rd, were placed from Mr. Edward Salvador's account.

RP at 188. This was not a misstatement of the facts. The two calls alleged in the information were made from Mr. Salvador's account. The call made from Mr. Sedano's account was placed on December 17, 2017, and was used to demonstrate it was the same number dialed as the other two charged calls. It was a correct statement of the evidence elicited at trial.

12

No. 36237-0-III
*State v. Sedano*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_Lawrence-Berrey, C.J._
Lawrence-Berrey, C.J.

WE CONCUR:

_Fearing, J._
Fearing, J.

_Pennell, J._
Pennell, J.