

This opinion was
filed for record
at 8 a.m. on Nov. 21, 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
)
    Petitioner, )
)
  v. )
)
ROBERT LEE PRY, ROBERT LAVALLE )
DAVIS, and ARNOLD MAFNAS CRUZ, )
)
    Respondents. )
)
              )

No. 96599-4

En Banc

Filed    NOV 2 1 2019

WIGGINS, J.—At issue in this case is whether the information charging Arnold Cruz[1] with rendering criminal assistance is constitutionally sufficient—specifically, whether the charging document must include additional statutory elements from RCW 9A.76.050. We hold that because section .050 provides essential elements for rendering criminal assistance and Cruz's information lacked those elements, the information is constitutionally deficient. Accordingly, we affirm the Court of Appeals, dismiss the charge of rendering criminal assistance without prejudice, and remand Cruz's case to the trial court for further proceedings consistent with this opinion.

---

[1] Although the caption for this case names multiple appellants, we are concerned only with the lower court's ruling for Arnold Cruz. The procedural history of the case is explained below.

BACKGROUND

On a December day in 2015, two men severely beat and killed 89-year-old Robert Archie Hood. The two men—Robert Pry and Robert Davis—forced their way into Hood's home, tied him up, and beat and robbed him. Worried that law enforcement would discover Hood's body, Pry and Davis contacted Cruz for assistance. Cruz was not involved in the murder or robbery of Hood's home. He became involved only after these events occurred.

Sometime later, Hood's caretaker visited Hood's home and, after noticing that Hood was gone and someone had rifled through the house, alerted the police. Hood's body was eventually discovered stuffed in a blue plastic barrel. The police released Cruz's name to the press as a person of interest, and Cruz surrendered himself to law enforcement.

The State charged Cruz by information. Originally, Cruz was charged only with first degree rendering criminal assistance (count 1). Months later, the State filed an amended information adding a second count: concealing a deceased body (count 2). For count 1, the amended information specified:

> On or about or between December 17, 2015 and December 30, 2015, in the County of Kitsap, State of Washington, the above-named Defendant, rendered criminal assistance to a person who had committed or was being sought for any class A felony; contrary to the Revised Code of Washington 9A.76.070(1).
>
> (MAXIMUM PENALTY—Ten (10) years imprisonment and/or a $20,000 fine pursuant to RCW 9A.76.070(2)(a) and RCW 9A.20.021(1)(b), plus restitution and assessments.)

. . . .

2

Special Allegation—Aggravating Circumstance—Lack of Remorse

AND FURTHERMORE, the Defendant demonstrated or displayed an egregious lack of remorse, contrary to RCW 9.94A.535(3)(q).

Special Allegation—Aggravating Circumstance—Impact on Persons Other than Victim

AND FURTHERMORE, the offense involved a destructive and foreseeable impact on persons other than the victim, contrary to RCW 9.94A.535(3)(r).

Clerk's Papers (CP) at 578-79. For count 2, the information stated:

On or about or between December 17, 2015 and December 30, 2015, in the County of Kitsap, State of Washington, the above-named Defendant, not having been authorized by the Kitsap County Coroner or his or her deputies, did remove the body of a deceased person (1) not claimed by a relative or friend; and/or (2) who came to his or her death by reason of violence or from unnatural causes; and/or (3) where there existed reasonable grounds for the belief that such death had been caused by unlawful means at the hands of another; and/or (4) to any undertaking rooms or elsewhere; and/or (5) and direct, aid or abet such taking; and/or (6) and in any way conceal the body of a deceased person for the purpose of taking the same to any undertaking rooms or elsewhere; contrary to Revised Code of Washington 68.50.050.

(MAXIMUM PENALTY-Three hundred sixty-four (364) days in jail or $1,000 fine, or both, pursuant to RCW 68.50.050, plus restitution, assessments and court costs.)

CP at 579. Cruz was convicted of both count 1 and count 2; the jury found him not guilty of any aggravating circumstance.[2] Cruz pleaded guilty to drug possession and bail jumping in another case. The State asked the court to run these earlier offenses

---

[2] The State tried Pry, Davis, and Cruz together. Pry was convicted of felony murder, kidnapping, robbery, identity theft, possession of stolen property, and witness tampering. Davis was found guilty of second degree identity theft. The State's case initially included a fourth defendant, Joshua Rodgers-Jones, but his case was severed. Rodgers-Jones is not involved in Cruz's current appeal.

3

and his convictions related to Hood consecutively, making the sentences exceptional. The court agreed, sentencing Cruz to a total of 151 months in prison.

On appeal, Cruz argued for the first time that the State's charging document was constitutionally deficient for failing to set forth all the essential elements of rendering criminal assistance. *State v. Pry*, No. 77930-3-I, slip op. at 3, 43 (Wash. Ct. App. Nov. 13, 2018) (unpublished), http://www.courts.wa.gov/opinion/pdf/779303.PDF.[3] The Court of Appeals agreed. *Id.* In an unpublished opinion, the court reversed Cruz's conviction and remanded the case for dismissal without prejudice. *Id.* at 43. The court declined to address Cruz's argument concerning the 151-month exceptional sentence. *Id.* The State sought limited review of the court's decision reversing Cruz's conviction. We granted the petition. *State v. Davis*, 192 Wn.2d 1022 (2019).

## ANALYSIS

Cruz argues that the Court of Appeals properly reversed his conviction because the information omitted essential elements of the crime of rendering criminal assistance. Cruz contends that RCW 9A.76.050 contains the required essential elements and their lack of inclusion in his charging document renders it constitutionally deficient. The State counters that section .050 is merely definitional and need not be included in the information. Furthermore, the State contends, even if the information

---

[3] Pry, Davis, and Cruz appealed together. *Pry*, No. 77930-3-I, slip op. at 1. Division One resolved their consolidated appeals, reversing Cruz's conviction and upholding those of Pry and Davis. *Id.* at 3, 22, 34. Pry sought review from this court, and the State moved to consolidate his appeal with Cruz. We denied Pry's petition and the State's motion. *State v. Davis*, 192 Wn.2d 1022 (2019). Despite the inclusion of Pry and Davis in the caption of this case, we granted review only of Cruz's appeal.

listed "vague" elements of the crime, Cruz was not prejudiced because the probable cause statement included with the information gave him adequate notice of the charges. For the following reasons, we agree with Cruz.

I. An information must include all essential elements of the crime to be constitutionally sufficient

Accused persons have the constitutional right to know the charges against them. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. "Pursuant to this right, '[t]he accused . . . has a constitutional right to be apprised of the nature and cause of the accusation against him. . . . This doctrine is elementary and of universal application, and is founded on the plainest principle of justice.'" *State v. Gehrke*, 193 Wn.2d 1, 6, 434 P.3d 522 (2019) (lead opinion) (first and third alterations in original) (quoting *State v. Ackles*, 8 Wash. 462, 464-65, 36 P. 597 (1894)). The State gives notice of charges by information, which "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." CrR 2.1(a)(1). An offense is not properly charged unless the information sets forth every essential statutory and nonstatutory element of the crime. *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991); *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995).

An "essential element is one whose specification is necessary to establish the very illegality of the behavior" charged. *State v. Johnson*, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992) (citing *United States v. Cina*, 699 F.2d 853, 859 (7th Cir. 1983)). The primary purpose of the essential element rule is "to apprise the accused of the charges against him or her and to allow the defendant to prepare a defense." *Vangerpen*, 125 Wn.2d at 787. While the information need not restate the

5

precise language of the essential elements of a crime, the information must do more than merely name the offense and list the elements—it must allege the particular facts supporting them. *State v. Nonog,* 169 Wn.2d 220, 226, 237 P.3d 250 (2010) (citing *State v. Leach,* 113 Wn.2d 679, 688, 782 P.2d 552 (1989)); *see also State v. Royse,* 66 Wn.2d 552, 557, 403 P.2d 838 (1965). We may look to other counts charged when assessing whether the information appropriately gave the defendant notice. *Nonog,* 169 Wn.2d at 227-28. Failure to allege each element means the information is insufficient to charge a crime and must be dismissed. *Vangerpen,* 125 Wn.2d at 788. A charging document is not required to define essential elements. *State v. Johnson,* 180 Wn.2d 295, 302, 325 P.3d 135 (2014).

When, as in this case, a charging document is challenged for the first time on appeal, we construe it liberally. *State v. McCarty,* 140 Wn.2d 420, 425, 998 P.2d 296 (2000). But, "'[i]f the document cannot be construed to give notice of or to contain in some manner the essential elements of a crime, the most liberal reading cannot cure it.'" *Id.* at 425 (alteration in original) (internal quotation marks omitted) (quoting *State v. Moavenzadeh,* 135 Wn.2d 359, 363, 956 P.2d 1097 (1998)).

Reviewing courts use a two-pronged test to resolve challenges to the sufficiency of evidence: (1) do the necessary facts appear in any form, or by fair construction can they be found, on the face of the charging document and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language that caused a lack of notice? *Kjorsvik,* 117 Wn.2d at 105-06. Under the first prong of *Kjorsvik,* courts may examine other charged counts when assessing whether an information gave a defendant appropriate notice. *Nonog,* 169 Wn.2d at

6

226. We do not look past the face of the document—and therefore do not examine items such as statements of probable cause—until the second prong in *Kjorsvik.* *State v. Goodman*, 150 Wn.2d 774, 788, 83 P.3d 410 (2004); *see also State v. Williams*, 162 Wn.2d 177, 186, 170 P.3d 30 (2007) (turning to a statement of probable cause that accompanied the information only after reaching the second prong of *Kjorsvik*).

If the necessary elements are not found or fairly implied, we presume prejudice and reverse without reaching the second prong and the question of prejudice. *State v. Zillyette*, 178 Wn.2d 153, 163, 307 P.3d 712 (2013); *City of Auburn v. Brooke*, 119 Wn.2d 623, 636, 836 P.2d 212 (1992) (courts do not reach prejudice unless there is some language in the document, however inartful, relating to the necessary elements); *see also* WAYNE R. LAFAVE ET AL., 5 CRIMINAL PROCEDURE § 19.3(b) (4th ed. 2015) ("[I]n most jurisdictions, even where the lack of an element in a pleading was not challenged before the trial court, it can be raised on appeal following a trial conviction, and if the pleading completely fails in this regard, the conviction will be automatically reversed.").

II.     The information charging Cruz with rendering criminal assistance lacked essential elements of the crime and therefore was constitutionally insufficient

Here, Cruz was charged with rendering criminal assistance in the first degree pursuant to RCW 9A.76.070. Count 1 reads:

> On or about or between December 17, 2015 and December 30, 2015, in the County of Kitsap, State of Washington, the above-named Defendant, rendered criminal assistance to a person who had committed

7

or was being sought for any class A felony; contrary to the Revised Code of Washington 9A.76.070(1).

CP at 578. This closely tracks the language of RCW 9A.76.08.070, which reads, in part:

> A person is guilty of rendering criminal assistance in the first degree if he or she renders criminal assistance to a person who has committed or is being sought for murder in the first degree or any class A felony . . . .

RCW 9A.76.070(1). In other words, Cruz was charged with "rendering criminal assistance," and the information told him this meant that he was charged with "rendering criminal assistance."

Cruz contends his information is deficient because it does not contain the essential elements set out in RCW 9A.76.050. Section .050 explains:

> As used in RCW 9A.76.070, 9A.76.080, and 9A.76.090, a person "renders criminal assistance" if, with intent to prevent, hinder, or delay the apprehension or prosecution of another person who he or she knows has committed a crime or juvenile offense or is being sought by law enforcement officials for the commission of a crime or juvenile offense or has escaped from a detention facility, he or she:
> (1) Harbors or conceals such person; or
> (2) Warns such person of impending discovery or apprehension; or
> (3) Provides such person with money, transportation, disguise, or other means of avoiding discovery or apprehension; or
> (4) Prevents or obstructs, by use of force, deception, or threat, anyone from performing an act that might aid in the discovery or apprehension of such person; or
> (5) Conceals, alters, or destroys any physical evidence that might aid in the discovery or apprehension of such person; or
> (6) Provides such person with a weapon.

We must determine whether section .050 provides essential elements or merely defines the offense of rendering criminal assistance. Fortunately, we have already

8

opined on this issue. In *State v. Budik*, we reviewed the sufficiency of the evidence supporting a conviction for rendering criminal assistance. 173 Wn.2d 727, 736-37, 272 P.3d 816 (2012). We identified the essential elements of the offense in light of section .050, stating that "a person renders criminal assistance if he or she (1) knows that another person (a) 'has committed a crime or juvenile offense' or (b) 'is being sought by law enforcement officials for the commission of a crime or juvenile offense' or (c) 'has escaped from a detention facility' and (2) intends 'to prevent, hinder, or delay the apprehension or prosecution' of that other person and (3) undertakes one of the six specified actions [listed in RCW 9A.76.050(1)-(6)]." *Id.* at 734 (quoting RCW 9A.76.050). We held that the evidence presented was not sufficient to support Budik's conviction based on the "essential element" in RCW 9A.76.050(4). *Id.* at 734-35, 738. *Budik* makes clear that RCW 9A.76.050 provides essential elements of the crime of rendering criminal assistance. *Id.* at 736-37.

Even if *Budik* could be distinguished, section .050 itself provides the essential elements of rendering criminal assistance. As noted above, "'[a]n "essential element is one whose specification is necessary to establish the very illegality of the behavior" charged.'" *Zillyette*, 178 Wn.2d at 158 (quoting *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003) (quoting *Johnson*, 119 Wn.2d at 147)). The aspects of rendering criminal assistance described in RCW 9A.76.050—and interpreted by *Budik* as essential elements—are essential elements under this rule. Without RCW 9A.76.050, we are left only with section .070, and this provision does not state what constitutes rendering criminal assistance. Section .070 states only that rendering criminal assistance occurs if one renders criminal assistance. This does *not* ""establish the

9

very illegality of the behavior" charged.'" *Id.* (quoting *Ward,* 148 Wn.2d at 811 (quoting *Johnson,* 119 Wn.2d at 147)).

The State contends that section .050 is merely definitional and *Budik* is inapposite. Because a charging document is not required to define essential elements, *Johnson,* 180 Wn.2d at 302, the State argues that section .050's definition of rendering criminal assistance is unnecessary to include in Cruz's information. But if section .050 is merely definitional, the question then becomes what does section .050 define? The simple answer might be that it defines rendering criminal assistance. However, no single act or mental state constitutes that offense. Section .050 requires intent, knowledge, and action: the *intent* to prevent, hinder, or delay the apprehension or prosecution of someone that he or she *knows* has committed a crime or is sought by authorities for commission of a crime, and *action* on behalf of that person by (among other things) harboring, concealing, or warning them; providing them with aid to avoid discovery; and concealing or destroying evidence. *See* RCW 9A.76.050. Section .050 does substantially more than provide a definition; it informs a suspected person of the very crime the State alleges he or she committed.

Furthermore, section .050 is necessary to give content to the crime of rendering criminal assistance. As Cruz correctly notes, not just any act of assistance is illegal— it must be one of six acts identified in section .050. *Budik,* 173 Wn.2d at 734-35. For example, a person who simply cooks a meal or provides emotional support for a person he or she knows has committed a crime is not rendering criminal assistance. Suppl. Br. of Resp't at 17; RCW 9A.76.050. As section .050 makes clear, section .070 does *not* criminalize that behavior. *See Zillyette,* 178 Wn.2d at 160 (alleging a violation

10

of a statute that includes both criminal and noncriminal behavior is overinclusive and fails to satisfy the essential elements rule). In this example, section .070 identifies neither the actions nor the mental state required to render criminal assistance. Those elements are found in RCW 9A.76.050. Thus, the definition of rendering criminal assistance found in section .050 necessarily provides essential elements of the crime.

The State also argues that *Budik* is inapposite for two reasons: (1) *Budik* treats section .050 as definitional and (2) the *Budik* court was not asked whether section .050 constitutes essential elements to be included in a charging document. The State's arguments are unconvincing.

First, although *Budik* uses the title of section .050, which uses the word "definition" ("Rendering criminal assistance—Definition of term"), 173 Wn.2d at 733-34, *Budik* characterizes section .050 not as merely definitional but as providing essential elements that the State must prove. *E.g., id.* at 738 (describing RCW 9A.76.050(4) as "one essential element" of the crime of rendering criminal assistance). Second, the State points to our decision in *State v. Porter* as evidence that this court distinguishes between essential elements for the sufficiency of the evidence versus sufficiency of an information. 186 Wn.2d 85, 92-93, 375 P.3d 664 (2016). The State misconstrues *Porter.* In that case, the defendant argued that charging documents must mirror pattern jury instructions. *Id.* We disagreed, noting charging documents and jury instructions serve different purposes. *Id.* Here, Cruz does not argue that an information must align with jury instructions; he contends only that *Budik* recognized section .050 as providing the essential elements of rendering

11

criminal assistance. The State offers no principled reason why the essential elements set out in *Budik* are not essential elements to be included in a charging document.

Despite the State's protests, the information here does not include any of the six acts specified in section .050 and identified in *Budik* as essential elements. 173 Wn.2d at 734, 738. Nor does the charging document include any facts that describe what, exactly, Cruz's crime entailed. *Nonog*, 169 Wn.2d at 226. The information "[m]erely cite[s] to the proper statute and nam[es] the offense"; the "name of the offense" does not "apprise[] the defendant of all of the essential elements of the crime." *Vangerpen*, 125 Wn.2d at 787. It is therefore constitutionally insufficient. *Id.*

Next, the State contends that reversing Cruz's conviction conflicts with our decisions in *Johnson*, 180 Wn.2d at 301-02, and *Porter*, 186 Wn.2d at 92-93. The State misreads these cases.

In *Johnson*, the defendant was charged by information with unlawful imprisonment. 180 Wn.2d at 301. The charging document stated, in relevant part:

> ". . . J.C. JOHNSON [is accused] of the crime of **Unlawful Imprisonment - Domestic Violence**, based on a series of acts connected together with another crime charged herein, committed as follows:
>
> "That the defendant J.C. JOHNSON in King County, Washington, during a period of time intervening between May 4, 2009 through May 6, 2009, did knowingly restrain [J.C.'s wife], a human being;
>
> "Contrary to RCW 9A.40.040, and against the peace and dignity of the State of Washington."

*Id.*

Johnson alleged that the definition of "restrain" set forth in former RCW 9A.40.010(1)[4] constituted an essential element of unlawful imprisonment, and the failure to include this definition rendered the information deficient. *Id.* at 301-02. We rejected this argument and held that the definition of restrain defines the term and limits the scope of the essential elements. *Id.* at 302. Definitions of elements are not required in a charging document. *Id.*

In *Porter*, a defendant was charged with unlawful possession of a stolen motor vehicle under RCW 9A.56.068. 186 Wn.2d at 88. The charging document stated:

> "[t]hat CLIFFORD MELVIN PORTER, JR., in the State of Washington, on or about the 27th day of August, 2011, did unlawfully and feloniously knowingly possess a stolen motor vehicle, knowing that it had been stolen, contrary to RCW 9A.56.068 and 9A.56.140, and against the peace and dignity of the State of Washington."

*Id.* (alteration in original). Porter argued that the information was insufficient because it did not include the definition of "possess." *Id.* at 90. Relying on *Johnson*, we held that the definition of "possess" merely defined and limited the scope of the essential elements of unlawful possession of a motor vehicle. *Id.* at 91.

The State contends that Cruz's case is similar to *Johnson* and *Porter*. But the State overlooks the critical difference between the crime charged in Cruz's information and the contested terms in *Johnson* and *Porter*. This case does not concern the definition of terms like "restrain" and "possess," which simply clarified crimes that were fully and properly stated in a charging document. We are instead concerned with the

---

[4] "'Restrain' is defined as 'to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty.' Former RCW 9A.40.010(1) (1975)." *Johnson*, 180 Wn.2d at 301.

13

proper statement of the crime itself. RCW 9A.76.070 states only that one is guilty of rendering criminal assistance if he or she renders criminal assistance to a criminal. In effect, one commits a crime by committing a crime. Section .070 does not inform a defendant in plain and simple terms what rendering criminal assistance means, CrR 2.1(a)(1), nor does it list any elements specifying the "'very illegality of the behavior'" charged. *Zillyette*, 178 Wn.2d at 158 (internal quotation marks omitted) (quoting *Ward*, 148 Wn.2d at 811).

*Johnson* and *Porter* are also distinguishable because the charging documents at issue in those cases included the intent elements of the charged crimes. *See Johnson*, 180 Wn.2d at 301 ("'knowingly restrain'") and *Porter*, 186 Wn.2d at 88 ("'feloniously knowingly possess . . . knowing that it had been stolen'"). These cases concerned only whether the terms "possession" and "restraint" were essential elements and included intent, whereas here, the challenged information wholly omitted reference to the mental state required to commit the crime of rendering criminal assistance. RCW 9A.76.070.[5]

Under our analysis in *Johnson* and *Porter*, the information charging Cruz with rendering criminal assistance does not make the grade under the Sixth Amendment and article I, section 22. The State was required to include the essential elements as set out in section .050 and recognized in *Budik*. Unlike the definitions of "restrain" and "possess," section .050 does not simply define or limit the scope of essential elements

---

[5] The definitions for "restrain" and "possess" are also unlike that of "rendering criminal assistance" because these terms can be generally understood by the ordinary person. Further elaboration would only further define these commonsense terms, and a charging document need not define essential elements. *Johnson*, 180 Wn.2d at 302.

set forth in section .070. Section .050 provides those elements. Because they were not present in the charging document, it was constitutionally deficient.

This deficiency cannot be cured by looking to count 2 of the information against Cruz, charging him with "removal or concealment of a deceased body," a gross misdemeanor under RCW 68.50.050. CP at 579. From count 2, it is possible to conclude that concealing a dead body was an act that amounted to rendering criminal assistance. But this is far from providing sufficient notice for the charge of rendering criminal assistance. Nothing in count 2 expressly links it to the crime of rendering criminal assistance or provides any description of the substance of rendering criminal assistance. Even if count 2 could be read as qualifying as one of the six acts listed in section .050 (such as concealing physical evidence under RCW 9A.76.050(5)), count 2 does not contain the required mens rea elements of rendering criminal assistance: *intent* to hinder or delay apprehension of someone he or she *knows* has committed a crime. Perhaps count 2 could be viewed as indicating that a suspect concealed a body with the intent to prevent its discovery, but this falls far short of the specific mental states RCW 9A.76.050 requires.

In contrast, sometimes a count or counts in an information may inform the defendant of elements missing from an otherwise deficient count of the same information. Such was the case in *Nonog,* in which the information charging Nonog with the crime of interfering with domestic violence reporting *was* constitutionally sufficient. *Nonog,* 169 Wn.2d at 223. Nonog argued that his charging document was insufficient because it did not define "domestic violence." *Id.* at 228. We reasoned that

the information was sufficient because other counts in that information, which the challenged count expressly referenced, did define domestic violence. *Id.* at 229. Here, nothing in count 2 indicates that it defines, or is associated with, rendering criminal assistance. Moreover, count 1 charges rendering criminal assistance but does not reference count 2's concealing a body. Thus, count 2 cannot save count 1 from constitutional deficiency.

The dissent disagrees on a different basis entirely. The dissent asserts that because the certificate of probable cause was purportedly attached[6] to the information, it was *part* of the information, and therefore we may properly turn to it under the first prong of the *Kjorsvik* test to determine whether the information gave constitutionally sufficient notice. Dissent at 2-3. With the certificate's assistance, the dissent concludes that the information was sufficient. *Id.* at 8-9.

The dissent is incorrect. Under the first prong of *Kjorsvik*, the inadequacy of the information cannot be cured by referring to the certificate of probable cause. Under *Kjorsvik*, we do not treat certificates of probable cause as part of the information, even when they are attached to or accompany the information. Our case law on this is clear.

---

[6] The dissent produces no proof that the certificate of probable cause was actually attached to the information. It asserts that the "fact is not disputed" that the certificate of probable cause was attached to the charging document—but the dissent's only "facts" are assertions the State made in its briefing before the Court of Appeals, before this court, and at oral argument. Dissent at 6-7. But assertions from appellate briefing and argument do not create facts. In any event, attached or unattached, the certificate of probable cause is irrelevant to the first prong of the *Kjorsvik* test.

In *Williams*, the petitioner challenged a charging document as inadequate for the first time on appeal. 162 Wn.2d at 185. In conducting the *Kjorsvik* analysis, we faced a situation identical to the one the dissent claims is before us today: "the information was accompanied by a statement of probable cause." *Id.* at 186. But we turned to this accompanying statement of probable cause only *after* reaching the second prong of the *Kjorsvik* analysis, noting that it is the *second* prong that "allows the court to look outside the information." *Id.* In short, the *Williams* court treated the information as *only* the text of the information itself, and the statement of probable cause—although accompanying the information—was *not* part of the information. *Id.* Rather, the statement of probable cause was considered part of the "'other circumstances of the charging process'" that *Kjorsvik* allows us to look to in the second prong of its analysis. *Id.* (quoting *Kjorsvik*, 117 Wn.2d at 106). Although the dissent relies on *Leach*, 113 Wn.2d 679, to justify its turn to the certificate of probable cause under the first prong of *Kjorsvik*, *Leach* predates *Kjorsvik*—as the dissent admits. Dissent at 3. *Williams*, decided in 2007, nearly two decades after *Leach*, expressly conducted a *Kjorsvik* analysis and clearly provides the persuasive precedent on this issue.

Accordingly, we shall not consider the certificate of probable cause when the text of the information itself is found constitutionally deficient under *Kjorsvik*'s first prong, whether the certificate accompanies the information or not.

The dissent protests, arguing that its analysis represents the "[c]ommon sense" method. Dissent at 5. But a commonsense reading of our own precedent points to precisely the opposite conclusion as *Williams* shows. Further, when *Nonog*—which the dissent cites for its turn to common sense—talks about "read[ing] the information

17

as a whole, according to common sense," it was discussing reading individual *counts* in the information in concert and not limiting our consideration in a *Kjorsvik* analysis to the challenged count alone. 169 Wn.2d at 227-28. When our long-established case law discusses analyzing the sufficiency of the information by looking "solely to the face of the charging instrument," a commonsense approach leads us to look at *only* what is *actually included in the text of the information*, not ancillary documents like a certificate of probable cause. *Goodman*, 150 Wn.2d at 788.

From the dissent's flawed methodology stems its flawed conclusion. The dissent's only way to save the information from being unconstitutional is to turn to the certificate of probable cause; without that certificate, the dissent's argument cannot succeed. With only the information itself before us, it is clear that Cruz was not given constitutionally sufficient notice of the crime of rendering criminal assistance.

In sum, the charging document failed to put Cruz on notice that he committed the offense of rendering criminal assistance. Cruz's objection to his charging document is not that it could be more elaborate; his objection is simply that the information failed to adequately inform him of the crime for which he was charged. We agree. This information was constitutionally insufficient. Accordingly, the Court of Appeals did not err in reversing Cruz's conviction.

## CONCLUSION

RCW 9A.76.050 sets forth essential elements for rendering criminal assistance. The State was therefore required to include the elements set out in section .050 in the information charging Cruz with rendering criminal assistance. Because Cruz's information entirely omitted the elements found in section .050, we hold it was constitutionally insufficient. Accordingly, the Court of Appeals properly reversed Cruz's conviction. We affirm the Court of Appeals and remand Cruz's case to the trial court for further proceedings consistent with this opinion.

_____
Wiggins, J.

WE CONCUR.

_____
Fairhurst, C.J.

_____
Stephens, J.

_____

_____

_____
Madsen, J.

_____
Gordon McCloud, J.

_____

_____

No. 96599-4

YU, J. (dissenting) — The legal principles at issue are well settled. "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him." WASH. CONST. art. I, § 22; *see also* U.S. CONST. amend. VI. Therefore, "[a]ll essential elements of a crime, statutory or otherwise, must be included in a charging document in order to afford notice to an accused of the nature and cause of the accusation against him." *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). However, "[c]harging documents which are not challenged until after the verdict will be more liberally construed in favor of validity than those challenged before or during trial." *Id.* at 102.

My disagreement with the majority is not based on these legal principles but on a fundamental question that precedes them: What is the "charging document"?

The majority's answer is that in every case the charging document is strictly limited to the information and therefore can never include an attached certificate of probable cause. Applying this formalistic approach, the majority holds that the charge of rendering criminal assistance (count 1) was constitutionally insufficient, so petitioner Arnold Cruz's conviction must be reversed. The majority's approach is not compelled by our precedent and ignores the practical and legal considerations at issue in postverdict challenges to the sufficiency of charging documents. I would take a more flexible approach, and I would hold that the charging document in this case was constitutionally sufficient to survive Cruz's postverdict challenge. I therefore respectfully dissent.

## ANALYSIS

A.  The charging document in this case includes both the information and the attached certificate of probable cause

Where, as here, the constitutional sufficiency of a charging document is challenged for the first time after the verdict, we apply the two-step *Kjorsvik* test: "(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?" *Id.* at 105-06. The first step of the *Kjorsvik* test "looks to the face of the charging document itself." *Id.* at 106. Proper application of this first step

2

therefore requires us to determine what "the charging document itself" is. In this case, I would hold that because the information and certificate of probable cause were physically attached to each other and were treated as a single document, they are both included within the charging document itself. Therefore, both may be considered in the first step of the *Kjorsvik* test.

Our precedent has already endorsed the approach I would take. For instance, in *State v. Leach*, we explicitly considered both the misdemeanor complaint and a copy of the police report that was attached to the complaint and incorporated by reference with the notation "'(see case).'" 113 Wn.2d 679, 684, 782 P.2d 552 (1989). We concluded that the charge was insufficient, but not because we refused to consider the police report. To the contrary, we held the charge was insufficient because "the photocopy of the police report received by Mr. Leach and incorporated by reference into the complaint omitted the year of birth of one of the alleged victims," an essential element raising the offense from a misdemeanor to a gross misdemeanor. *Id.* However, "[i]f that crucial information had been provided him, he would have been able to determine that he was charged with a gross misdemeanor" and the charge would have been constitutionally sufficient. *Id.*; *see also id.* at 690.

*Leach* predates *Kjorsvik*, but it is still good law for the proposition that the charging document may include a police report or certificate of probable cause that

3

is attached to the complaint or information. *Kjorsvik* did not abrograte *Leach*; it reached an issue that *Leach* did not, namely "whether a different standard of review should be applied when, as here, the accused first raises the issue on appeal." *Kjorsvik*, 117 Wn.2d at 103; *see Leach*, 113 Wn.2d at 700-01 (Brachtenbach, J., concurring). *Kjorsvik* answered yes, "[c]harging documents which are not challenged until after the verdict will be more liberally construed in favor of validity than those challenged before or during trial." 117 Wn.2d at 102.

*Kjorsvik* did not disavow *Leach*'s approach to defining the charging document, nor did *Williams* or *Goodman*. *State v. Williams*, 162 Wn.2d 177, 170 P.3d 30 (2007); *State v. Goodman*, 150 Wn.2d 774, 83 P.3d 410 (2004). In each case, the court merely held that the language of the information, by itself, was sufficient to satisfy the first step of the *Kjorsvik* test. *Williams*, 162 Wn.2d at 186; *Goodman*, 150 Wn.2d at 788-89; *Kjorsvik*, 117 Wn.2d at 110-11. None of these cases reexamined (much less explicitly rejected) *Leach*'s recognition that a charging document sometimes includes an attached police report or statement of probable cause.

Nevertheless, the majority contends these cases show that *Kjorsvik*'s explicit adoption of a *more liberal* construction standard for charging documents implicitly compels a *stricter* definition of the charging document itself. *See* majority at 16-18. The counterintuitive result is that in a case like this one, a charging document

4

that would have been constitutionally sufficient pursuant to *Leach* is

constitutionally deficient pursuant to *Kjorsvik*. I cannot agree with this reading of

our precedent.

*Leach*'s approach to defining the charging document is also entirely

consistent with the logic of the *Kjorsvik* test. The purpose of *Kjorsvik*'s more

liberal construction standard is to discourage "'sandbagging,'" which is "a

potential defense practice wherein the defendant recognizes a defect in the

charging document but forgoes raising it before trial when a successful objection

would usually result only in an amendment of the pleading." *Kjorsvik*, 117 Wn.2d

at 103. In keeping with this purpose, the only reason that the first step of the

*Kjorsvik* test is limited to the charging document is to differentiate between

challenges to the sufficiency of the charging document and challenges to the

sufficiency of the State's evidence. *See United States v. Hall*, 20 F.3d 1084, 1087

(10th Cir. 1994). This limitation is *not* intended to artificially narrow our inquiry

based on "formal defects." *Hagner v. United States*, 285 U.S. 427, 431, 52 S. Ct.

417, 76 L. Ed. 861 (1932).

In postverdict challenges, we must read the charging document "as a whole,

according to common sense." *State v. Nonog*, 169 Wn.2d 220, 227, 237 P.3d 250

(2010). Common sense indicates that when Cruz was provided with a three-page

information attached to a three-page certificate of probable cause, he was put on

5

notice of the contents of all six pages. If he felt that the certificate of probable cause was surplusage, then he could have moved to strike it. *See* CrR 2.1(b). He also had the right to challenge the sufficiency of the charges before or during trial. Cruz was clearly aware of this right because he brought a midtrial motion to dismiss the charge of concealment of a deceased body (count *2*) for failing to allege the essential elements, which the trial court denied. Clerk's Papers (CP) at 968-70; 27 Verbatim Report of Proceedings (June 20, 2016) at 4728. However, he did not challenge the sufficiency of the rendering criminal assistance charge (count *1*) until after he was convicted. Although we cannot know for certain, this history strongly suggests intentional sandbagging. The majority's approach today encourages such tactics, contrary to the purpose of the *Kjorsvik* test.

The majority further suggests that we cannot consider the certificate of probable cause in the first step of the *Kjorsvik* test because there is "no proof that the certificate of probable cause was actually attached to the information." Majority at 16 n.6. However, that fact is not disputed. If it were, I would request further briefing from the parties or remand to the superior court to take additional evidence pursuant to RAP 9.11, but such additional steps are unnecessary here.

The superior court's docket shows that the information and certificate of probable cause were filed on the same day under the same subnumber as a single document. The State asserted in its briefing to both the Court of Appeals and this

court that the information "was accompanied by a statement of probable cause." Br. of Resp't at 84 (Wash. Ct. App. No. 49284-9-II (2018)); Pet. for Review at 11. Cruz never challenged those assertions. And at oral argument before this court, the State confirmed that it is the ordinary practice of the Kitsap County Prosecutor's Office to physically attach the certificate of probable cause to the information and provide them both to the defendant as a single document at arraignment. Wash. Supreme Court oral argument, *State v. Pry*, No. 96599-4 (June 25, 2019), at 7 min., 5 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. Cruz has not challenged that assertion either, nor has he contended that the State deviated from its ordinary practice in this case.

There is thus no dispute that the certificate of probable cause was attached to the information and they were provided to Cruz together as a single charging document. I would therefore hold that for purposes of the first step of the *Kjorsvik* test, the charging document here includes both the information and the attached certificate of probable cause.[1]

---

[1] The record does not indicate whether the certificate of probable cause was also attached to the amended information, but that does not change the analysis because Cruz had already been provided with the certificate of probable cause as an attachment to the original information.

B.    Assuming that RCW 9A.76.050 does set forth essential elements of rendering criminal assistance, the charging document in this case sufficiently alleges them

When both the information and the certificate of probable cause are considered, the charging document in this case easily passes the first step of the *Kjorsvik* test.  Cruz contends that RCW 9A.76.050 sets forth essential elements of the crime of rendering criminal assistance and that three of those elements are missing from the charging document in this case:

> [That the defendant] "(1) knows that another person (a) 'has committed a crime or juvenile offense' or (b) 'is being sought by law enforcement officials for the commission of a crime or juvenile offense' or (c) 'has escaped from a detention facility' and (2) intends 'to prevent, hinder, or delay the apprehension or prosecution' of that other person and (3) undertakes one of the six specified actions."

Answer to Pet. for Review at 7 (emphasis omitted) (quoting *State v. Budik*, 173 Wn.2d 727, 734, 272 P.3d 816 (2012) (quoting RCW 9A.76.050)).  I would assume without deciding that these are essential elements because the facts supporting each one are alleged in the charging document:

> Cruz then told [his friend] about how he had disposed of the body of the "old man" from Bremerton that had been in the news.  Cruz stated he had killed people before and he did not want the young men responsible to go to prison.  Cruz stated he agreed to dispose of the body so there would be no evidence of the murder.

CP at 5.

8

This language, liberally construed, alleges every element that Cruz contends is missing: (1) Cruz knew that other people (the young men) had committed a crime (killing the "old man"); (2) Cruz intended to prevent the young men's apprehension and prosecution (because he did not want them to go to prison); and (3) Cruz undertook the specific action of "[c]onceal[ing], alter[ing], or destroy[ing] any physical evidence that might aid in [their] discovery or apprehension" (by disposing of the victim's body). RCW 9A.76.050(5). Therefore, assuming without deciding that these are all essential elements, "the necessary facts" for each one appear "in the charging document." *Kjorsvik*, 117 Wn.2d at 105.

## CONCLUSION

The majority today applies an unduly strict standard for evaluating a charging document that is challenged for the first time after the verdict, encouraging the very type of sandbagging the *Kjorsvik* test is intended to prevent. I would hold that the charging document in this case satisfies the first step of the *Kjorsvik* test and, because Cruz does not argue he was "nonetheless actually prejudiced by the inartful language," his conviction should be affirmed. *Id.* at 106. I therefore respectfully dissent.

9

_____

González, J.