# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>ANTHONY FILIPPINI<br><br>Appellant. | No.  57319-9-II<br><br><br>UNPUBLISHED OPINION |

PRICE, J. — Anthony Filippini appeals his conviction for hit and run (injury).  Filippini argues that the State's amended information was deficient because, by not explicitly including the requirement for drivers to provide insurance information in the event of an accident, it did not contain all the essential elements of the crime.  Filippini also argues that the to-convict jury instruction violated his due process rights.

We affirm.

## FACTS

I.  BACKGROUND

In January 2020, while passing a bicyclist with his car, Filippini struck the bicyclist's elbow.  Filippini did not stop.  At the next intersection, the bicyclist, Mark Kukich, caught up to the car and angrily yelled and pounded his fist on the driver's side window.  Then, as Kukich moved to the front of the car, Filippini moved forward, hitting the bicycle.  Kukich was knocked

to the ground and hit his head on the pavement. Filippini immediately left the scene and drove home.

Shortly after the incident, law enforcement contacted Filippini at his home. Filippini provided a statement and was arrested.

II. CHARGING DOCUMENT

The State initially charged Filippini with hit and run (injury). Subsequently, the State filed an amended information that added a charge of vehicular assault. With respect to the hit-and-run charge, the amended information stated,

> That he, ANTHONY JAMES FILIPPINI, in the City of Vancouver, State of Washington, on or about January 7, 2020, did operate a vehicle which was involved in an accident which resulted in injury to another person, to wit: Mark Steven Kukich, and knowing that he had been involved in the accident the Defendant did fail to (a) immediately stop his vehicle at the scene of the accident or as close thereto as possible, and/or (b) forthwith return to or remain at the scene of the accident and *give required information, including his or her name, address, and vehicle license number*, and display his or her vehicle driver's license to any person struck or injured or the driver or any occupant of, or any person attending, any such vehicle collided with, and/or (c) render to any person injured in such accident reasonable assistance, including the carrying or making of arrangements for the carrying of such person to a physician or hospital for medical treatment if it is apparent that such treatment is necessary . . . .

Clerk's Papers (CP) at 53 (emphasis added). The amended information did not specifically mention the requirement, set forth in the hit-and-run statute, for the driver to provide their "insurance company" and "insurance policy number." RCW 46.52.020(3). Filippini did not object to the form of the amended information.

III. TRIAL, JURY INSTRUCTIONS, AND VERDICT

The case proceeded to a jury trial. The State called several witnesses and Filippini testified in his own defense.

Following testimony, the trial court instructed the jury. The to-convict instruction, jury instruction 16, described the elements of hit and run (injury) that the State needed to prove for a conviction. Unlike the amended information, instruction 16 included a specific reference to the requirement to provide insurance information. In addition, the last portion of the instruction included the standard pattern language related to the jury's consideration of the evidence when making the decision to convict or to acquit. The instruction stated in full,

> To convict the defendant of Hit and Run, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about January 7, 2020, the defendant was the driver of a vehicle;
>
> (2) That the defendant's vehicle was involved in an accident resulting in injury to any person;
>
> (3) That the defendant knew that he had been involved in an accident;
>
> (4) That the defendant failed to satisfy his obligation to fulfill all of the following duties:
>
> > (a) Immediately stop the vehicle at the scene of the accident or as close thereto as possible;
> >
> > (b) Immediately return to and remain at the scene of the accident until all duties are fulfilled.
> >
> > (c) Give his name, address, *insurance company, insurance policy number* and vehicle license number, and exhibit his driver's license, to any person struck or injured or the driver or any occupant of, or any person attending, any vehicle collided with; and
> >
> > (d) Render to any person injured in the accident reasonable assistance, including the carrying or making of arrangements for the carrying of such person to a physician or hospital for medical treatment if it is apparent that such treatment is necessary or such carrying is requested by the injured person or on his behalf; and
>
> (5) That any of these acts occurred in the State of Washington.

3

> If you find *from the evidence* that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing *all of the evidence*, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 115 (emphasis added); *see* 11A *Washington Practice: Washington Pattern Jury Instructions: Criminal* 97.02, at 452-53 (5th ed. 2021) (WPIC).  Filippini did not object to instruction 16.

The trial court also gave instruction 5.  Using the standard pattern language, the instruction defined reasonable doubt, and it explained that the State carried the burden of proof and that the defendant is presumed innocent:

> The defendant has entered a plea of not guilty.  That plea puts in issue every element of each crime charged.  The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt.  The defendant has no burden of proving that a reasonable doubt exists [as to these elements [sic].
>
> A defendant is presumed innocent.  This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
>
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence.  It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence.  If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

CP at 104; *see* 11 WPIC 4.01, at 98.

The jury acquitted Filippini of the vehicular assault charge, but found him guilty of hit and run (injury).  The trial court sentenced Filippini to 60 days of work crew under the first time offender waiver.

Filippini appeals.

4

ANALYSIS

Filippini appeals based on two arguments. First, he argues the amended information omitted an essential element of the crime of hit and run (injury), and second, he argues the to-convict instruction violated his due process rights because of the different wording related to the jury's consideration of the evidence for a conviction versus an acquittal. Each will be addressed in turn.

I. SUFFICIENCY OF INFORMATION

Filippini argues that because the amended information failed to explicitly identify the requirement of exchanging insurance information, it omitted an essential element of the offense and was, therefore, constitutionally deficient. We disagree.

A. LEGAL PRINCIPLES

Under the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution, charging documents must include all of the essential elements of the charged crime. *State v. Pry,* 194 Wn.2d 745, 751, 452 P.3d 536 (2019). " 'An essential element is one whose specification is necessary to establish the very illegality of the behavior charged.' " *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013) (internal quotation marks omitted) (quoting *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)). The purpose of including all essential elements in the charging documents is to inform the defendant of the nature of the alleged crime that they " 'must be prepared to defend against.' " *Id.* at 158-59 (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 101, 812 P.2d 86 (1991)). We review allegations of constitutional violations, such as a deficient charging document, de novo. *State v. Canela*, 199 Wn.2d 321, 328, 505 P.3d 1166 (2022).

When a defendant challenges the sufficiency of the charging document at or before his trial, we construe its language strictly. *State v. Phillips*, 98 Wn. App. 936, 940, 991 P.2d 1195 (2000). But if the defendant challenges the charging document for the first time on appeal, we construe it liberally in favor of validity. *Zillyette*, 178 Wn.2d at 161. In liberally construing the charging document, we use the two-prong standard developed in *Kjorsvik*. 117 Wn.2d at 105-106. Under this standard, we determine (1) whether the necessary elements appear in any form, or by fair construction, on the face of the document and, if so, (2) whether the defendant can still show prejudice from the inartful language. *See Zillyette*, 178 Wn.2d at 162 (citing *Kjorsvik*, 117 Wn.2d at 106 ("The standard of review we here adopt will require at least some language in the information giving notice of the allegedly missing element(s) *and* if the language is vague, an inquiry may be required into whether there was actual prejudice to the defendant. The second prong—allowing the defendant to show that actual prejudice resulted from inartful or vague language—affords an added layer of protection to a defendant even where the issue is first raised after verdict or on appeal.")).

B. APPLICATION

Filippini argues that the amended information violated his constitutional rights because it did not expressly specify "insurance information." Appellant's Opening Br. at 10.

To establish the crime of hit and run (injury), the statute requires, in relevant part:

(1) A driver of any vehicle involved in an accident resulting in the injury to . . . any person . . . shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to, and in every event remain at, the scene of such accident until he or she has fulfilled the requirements of subsection (3) of this section . . . .

. . . .

(3) [T]he driver of any vehicle involved in an accident resulting in injury to . . . any person . . . shall give his or her name, address, *insurance company, insurance policy number*, and vehicle license number and shall exhibit his or her vehicle driver's license to any person struck or injured or the driver or any occupant of, or any person attending, any such vehicle collided with and shall render to any person injured in such accident reasonable assistance . . . .

. . . .

[(4)](b) Any driver covered by the provisions of subsection (1) of this section failing to *stop or comply* with any of the requirements of subsection (3) of this section in the case of an accident resulting in injury is guilty of a class C felony, and upon conviction, is punishable according to chapter 9A.20 RCW.

RCW 46.52.020 (emphasis added).[1]

According to Filippini, providing insurance information regarding the driver's "insurance company [and] insurance policy number" is an essential element of the crime of hit and run (injury). Appellant's Opening Br. at 9 (alteration in original) (internal quotation marks omitted). Filippini argues that specifying insurance information is critical because a driver's failure to provide any of the required pieces of information *can* lead to conviction.

The State responds that because the crime of hit and run (injury) is described with alternatives, providing insurance is not an essential element of the crime.

Here, because Filippini is challenging the sufficiency of the information for the first time on appeal, we liberally construe the amended information in favor of validity with the use of *Kjorsvik's* two-pronged standard of review. 117 Wn.2d at 105-106.

---

[1] Case law has also added a mens rea component—specifically that the driver *knew* they were in an accident. *State v. Sutherland*, 104 Wn. App. 122, 130, 15 P.3d 1051 (2001).

Assuming, without deciding, that providing insurance information is an essential element of the crime of hit and run (injury),[2] we start with the first prong and ask whether the necessary element (providing insurance information) appears in any form, or by fair construction, on the face of the charging document. *Zillyette*, 178 Wn.2d at 162. While it is true the words "insurance company" and "insurance policy number" did not appear on the face of the amended information, the document did reference "required information." CP at 53. This clearly is a reference to the insurance information, albeit in a "vague or inartful" form. *Kjorsvik*, 117 Wn.2d at 111.

Having concluded the reference to insurance information was included, albeit vaguely, we move to the second prong—whether Filippini can show prejudice from this lack of clarity in the amended information. *Id.* at 106, 111; *see also Zillyette*, 178 Wn.2d at 162. This is where his claim plainly fails. Filippini has not attempted to show any prejudice from the vagueness of the reference to the insurance information. Indeed, under these facts, it would be hard to imagine how such an argument would go.

Consider a hypothetical situation where a defendant initially stops after an accident but after providing some information, quickly leaves the scene after being pressed for insurance information. There, a better argument could be made for prejudice if the charging document was vague about the specifics of what information was required. But, in this case, Filippini left the scene of the incident without any interaction with Kukich, much less any exchange of information. Under these circumstances, there would be no practical relevance to the charging document's lack

---

[2] As noted, the State argues that the requirement of providing insurance information is not an essential element of the crime.

of specificity about the insurance obligation to Filippini's notice of the charges or preparation for trial. Thus, Filippini cannot show prejudice under the second prong of the *Kjorsvik* standard.

Under a liberal construction, the amended information sufficiently charged the elements of the crime of hit and run (injury). Filippini's claim fails.

## II. HIT AND RUN TO-CONVICT JURY INSTRUCTION

Filippini next argues that the trial court's to-convict instruction violated his right to due process because of the different language used for conviction versus acquittal. We decline to reach this unpreserved claim.

### A. LEGAL PRINCIPLES

We may decline to review claims of error that the defendant did not raise in the trial court unless the claimed error is "manifest error affecting a constitutional right." RAP 2.5(a)(3). This exception "does not permit *all* asserted constitutional claims to be raised for the first time on appeal." *State v. Kirkman*, 159 Wn.2d 918, 934, 155 P.3d 125 (2007). Rather, "[w]e look to the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

After determining whether the alleged error is of constitutional magnitude, we look to whether the error is manifest. *Id.* at 99. Error is manifest under RAP 2.5(a) if the appellant can show actual prejudice, demonstrated by a " 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.' " *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Kirkman*, 159 Wn.2d at 935). Permitting review of all unpreserved errors that implicate constitutional rights, " 'undermines the trial process, generates unnecessary appeals,' " and wastes judicial resources. *State v. McFarland*, 127 Wn.2d

322, 333, 899 P.2d 1251 (1995) (quoting *State v. Lynn*, 67 Wn. App. 339, 344, 835 P.2d 251 (1992)).

Jury instructions must adequately convey to the jury that the State has the burden of proving every element of the crime charged beyond a reasonable doubt under the due process clause of the Fourteenth Amendment  *State v. Imokawa*, 194 Wn.2d 391, 396, 450 P.3d 159 (2019).  When a defendant challenges the adequacy of specific jury instructions regarding the State's burden of proof, we review the challenged jury instructions de novo in the context of the instructions as a whole.  *Id.*

B.  APPLICATION

Filippini argues that the to-convict instruction violated his right to due process because the jury was given two different evidentiary review standards, with the standard for conviction being less stringent than the standard for acquittal.  Filippini points to the following phraseology differences used in instruction 16 (and in the pattern instruction):

> *If you find from the evidence* that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, *if, after weighing all of the evidence*, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 115 (emphasis added).

From this different phraseology, Filippini argues that the trial court essentially differentiated between conviction and acquittal in how jurors were to examine the evidence. Filippini contends that the language heightens the burden for an acquittal; that is, because an acquittal could only flow from *weighing all of the evidence*, but a conviction merely requires a

finding *from the evidence*, a reasonable juror *could* or *might* believe that conviction was permissible on a less stringent review of the evidence.

Critically, however, Filippini did not object to the to-convict instruction at trial. As a result, even if Filippini's claim conceivably implicates a constitutional interest, we may nonetheless decline to review it if the error was not manifest. RAP 2.5(a)(3); *O'Hara*, 167 Wn.2d at 99.

Here, even assuming the language of instruction 16 is constitutional error, Filippini makes no attempt to demonstrate that the error is manifest. Filippini's argument that a reasonable juror *might* believe that conviction was permissible on a less stringent review of the evidence is purely speculative. And such a possibility seems especially remote given that a companion instruction, instruction 5, clearly defined reasonable doubt and explained the State's burden and the presumption of innocence. *See State v. Weaver*, 198 Wn.2d 459, 467, 496 P.3d 1183 (2021) (jurors are presumed to follow the court's instructions and read the instructions as a whole). Filippini fails to show that the mere possibility a juror might read some significance into the slight difference in language found in instruction 16 had any plausible *practical* and *identifiable* consequences in the trial. *O'Hara*, 167 Wn.2d at 99. As a result, Filippini has failed to show actual prejudice.

Therefore, even assuming the claimed error affects a constitutional right, we conclude that Filippini has failed to demonstrate that the error is manifest. Accordingly, we decline to reach Filippini's unpreserved challenge to instruction 16.

CONCLUSION

We hold there was no error in the amended information and we decline to reach Filippini's unpreserved claims about the to-convict instruction. We affirm.

11

No. 57319-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

GLASGOW, C.J.

CHE, J.